**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-1217**

_____

JAGUAR LAND ROVER NORTH AMERICA, LLC,

        Plaintiff - Appellee,

    v.

MANHATTAN IMPORTED CARS, INCORPORATED,

        Defendant - Appellant.

_____

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Deborah K. Chasanow, Chief District
Judge. (8:08-cv-01599-DKC)

_____

Argued: March 21, 2012          Decided: April 23, 2012

_____

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Keenan wrote the
opinion, in which Judge Duncan and Judge Diaz joined.

_____

**ARGUED:** Brad D. Weiss, CHARAPP & WEISS, LLP, McLean, Virginia,
for Appellant. John Joseph Sullivan, HOGAN LOVELLS US LLP, New
York, New York, for Appellee. **ON BRIEF:** Emily D. Barnes,
CHARAPP & WEISS, LLP, McLean, Virginia, for Appellant. Allison
Caplis, HOGAN LOVELLS US LLP, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

In this contract dispute, we consider whether the district court erred in entering summary judgment in favor of an automobile distributor and franchisor, Jaguar Land Rover North America, LLC (JLR), against one of its franchisees. The district court determined, among other things, that JLR properly suspended certain incentive payments to Manhattan Imported Cars, Inc. (Manhattan), a Jaguar and Land Rover franchisee, under the terms of the parties' agreements.

On appeal, Manhattan contends that the district court erred in holding that two contracts, signed by the parties two weeks before their execution of a third contract, were enforceable despite a general integration clause in the third contract purporting to cancel and supersede any agreements previously executed between the parties. Manhattan also asserts that the district court erred in holding that JLR's actions did not violate certain Maryland statutes requiring distributors to act in "good faith," and prohibiting them from requiring an existing dealer to remove another existing franchise from the dealer's facilities. Upon our review of these issues, we affirm the district court's judgment.

2

I.

In 2005, Manhattan owned a Lincoln Mercury automobile dealership and a Jaguar automobile dealership. Manhattan operated those dealerships in a single facility in Rockville, Maryland (the Rockville facility), pursuant to various agreements that included a Jaguar Dealer agreement and a Jaguar Performance agreement. In the original Jaguar Performance agreement between the parties, Jaguar Cars, the distributor of Jaguar vehicles, set forth improvement and renovation requirements for the Rockville facility, and consented to Manhattan's operation of a "dual" dealership selling both Jaguar and Lincoln Mercury vehicles.

In 2006, Manhattan had negotiated to acquire a Land Rover franchise from another dealer. Because Manhattan intended to operate the Land Rover dealership at its Rockville facility, Manhattan needed to obtain approval from Jaguar Cars for this proposed expansion. Also, in order to begin selling vehicles as a Land Rover dealer, Manhattan was required to obtain the approval of Land Rover North America, Inc. (Land Rover N.A.), the distributor of Land Rover vehicles. At that time, Ford Motor Company owned both Jaguar Cars and Land Rover N.A., and common personnel (the franchise personnel) handled the franchise operations for both brands. On April 21, 2006, the franchise personnel submitted to Manhattan via email an "agreement

3

package," which contained three separate agreements: the Land Rover Letter of Intent (the letter of intent), the Amendment to the Jaguar Performance Agreement (the performance agreement), and the Land Rover Dealer Agreement (Land Rover dealer agreement). On May 3, 2006, Manhattan signed both the letter of intent, which contained Land Rover N.A.'s approval of the anticipated transfer of the Land Rover dealership, and the performance agreement, which contained Jaguar Cars' approval to add the Land Rover dealership to the Rockville facility. Both documents addressed necessary improvements and renovations to the Rockville facility.

On May 16, 2006, after completing its purchase of the Land Rover franchise, Manhattan signed the Land Rover dealer agreement, in which Land Rover N.A. authorized Manhattan to operate the new Land Rover dealership. The Land Rover dealer agreement included a general integration clause, stating that the document "contains the entire agreement" between the parties and "cancels, supersedes and annuls any prior contract, agreement or understanding" between the parties.

After executing the Land Rover dealer agreement, Manhattan was entitled to participate in the Business Builder Program operated by Land Rover N.A. That program was substantially similar to Jaguar Cars' Business Builder Program, in which Manhattan already was a participant. Under these Business

4

Builder Programs, dealers are awarded a certain percentage of the Manufacturer's Suggested Retail Price (MSRP incentive payments) for each Jaguar or Land Rover vehicle sold, provided that the dealer has made certain scheduled improvements to its dealership facility.

At issue in this case is Manhattan's entitlement to certain MSRP incentive payments. The facility-related improvements, to which the MSRP incentive payments are tied, typically are detailed in a letter of intent or a performance agreement, and contain a timeline of "project milestones" for the achievement of an approved facility plan. These approved facility plans typically include a final "open for business" deadline.

Under the rules of the Business Builder Programs, when a dealer fails to meet any given project milestone by more than 90 days, and the final "open for business" milestone is unlikely to be achieved, the project is classified as being "at risk." Pursuant to those rules, once a project is categorized as being "at risk," that designation "trigger[s] an immediate suspension" of MSRP incentive payments.

In the present case, the facility plans required by the Business Builder Programs were included in the letter of intent and the performance agreement. In those documents, Manhattan agreed that after purchasing the Land Rover franchise, Manhattan would make certain renovations to the Rockville facility. To

5

assist in achieving this goal, the letter of intent and the performance agreement included a set of common project milestones, with a final deadline of January 1, 2008, by which Manhattan was obligated to be "open for business" as a "Jaguar/Land Rover Centre."

Both the letter of intent and the performance agreement also contained a paragraph entitled "Relocation of Lincoln Mercury," in which Manhattan agreed to remove its Lincoln Mercury operations from the Rockville facility by either January 1, 2008, or, at the latest, by July 1, 2008, depending on the strength of Land Rover sales. This provision further stated that Manhattan understood that Land Rover N.A. and Jaguar Cars

> would not have entered into this Agreement, but for [Manhattan's] commitment to relocate [the] Lincoln Mercury operations out of the [Rockville] facility. If [Manhattan] fail[s] to relocate [its] Lincoln Mercury operations . . . under the terms of this agreement, [Manhattan] further understand[s] that any such failure may result in [Manhattan's] immediate ineligibility to receive payments under the Business Builder incentive program . . . .

Ford sold the Land Rover and Jaguar brands in 2008. In connection with that transaction, Land Rover N.A. was reorganized and became JLR, the appellee in this case. JLR also acquired Jaguar Cars. Following these changes, JLR entered into superseding agreements with Manhattan that incorporated the same terms and conditions of the earlier agreements between Manhattan

6

and Jaguar Cars.  The agreements between Manhattan and Land Rover N.A. remained in effect.

By the time JLR became the distributor for Land Rover and Jaguar vehicles, Manhattan had completed some facility renovations, but had complied only with its first project milestone and had failed to meet several others.  The parties attempted on numerous occasions to negotiate a revised renovation schedule but were unable to reach an agreement.

In April 2008, JLR notified Manhattan that JLR was suspending Manhattan's MSRP incentive payments.  Manhattan responded by letter, threatening legal action and asserting that any suspension of MSRP incentive payments would violate Maryland law.

In June 2008, JLR filed an action in the district court, seeking a declaration that JLR was entitled to withhold from Manhattan the MSRP incentive payments.  Manhattan filed a counterclaim asserting several causes of action.  As relevant to this appeal, Manhattan asserted that JLR violated Maryland Transportation Code (Code) § 15-207(d) by requiring Manhattan to relocate its Lincoln Mercury dealership, and that JLR violated Code § 15-206.1 by failing to act in good faith.

JLR later filed a motion for summary judgment, which Manhattan opposed.  After considering the pleadings and other documents filed by the parties, the district court entered

7

summary judgment in favor of JLR.[*]  Manhattan timely filed this appeal.

## II.

We review the district court's award of summary judgment de novo.  S.C. Green Party v. S.C. State Election Comm'n, 612 F.3d 752, 755 (4th Cir. 2010).  Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## A.

Manhattan first contends that JLR was not permitted to suspend the MSRP incentive payments based on Manhattan's failure to meet the project milestones contained in the letter of intent and the performance agreement, because those documents were nullified by the later-executed Land Rover dealer agreement and the integration clause contained in that agreement.  Manhattan further asserts that because the Land Rover dealer agreement did

---

[*] The district court denied JLR's motion for summary judgment on one of Manhattan's counts in its counterclaim relating to a dispute over warranty payments.  However, the parties later reached a settlement on the warranty claim and filed a joint motion to dismiss that claim.  The district court entered an order dismissing the warranty claim with prejudice.

8

not contain any facility-improvement requirements, JLR lacked any basis to suspend the MSRP incentive payments. We disagree with Manhattan's arguments.

Because the answer to this question of contract interpretation is governed by Maryland law, we begin by reviewing principles relevant to our determination whether the Land Rover dealer agreement is an integrated contract representing the final and complete agreement between the parties. See Shoreham Developers, Inc. v. Randolph Hills, Inc., 235 A.2d 735, 739 (Md. 1967). Under Maryland law, the presence of an express integration clause does not automatically resolve the parties' actual intention regarding integration. Courts in Maryland have explained that even the use of an unambiguous phrase, such as "this contract contains the final and entire [a]greement between the parties," is not invariably conclusive, and application of this type of phrase is a matter that may be subject to further interpretation. Id.; see Whitney v. Halibut, Inc., 202 A.2d 629, 634 (Md. 1964).

Integration clauses are more likely to be enforced literally when the same parties have entered into more than one agreement addressing the same subject. See Hercules Powder Co. v. Harry T. Campbell Sons Co., 144 A. 510, 516-17 (Md. 1929). In such a circumstance, the later-executed agreement annuls any prior agreements addressing the same subject because the

9

agreements conflict and cannot be construed together. See id. However, when separately-executed contracts between the same parties do not have conflicting provisions and are entered into as part of a single transaction, those agreements will be construed together even when they are executed at different times and do not refer to each other. See Rocks v. Brosius, 217 A.2d 531, 545 (Md. 1966).

In the present case, the terms of the Land Rover dealer agreement did not contradict, vary, or amend any of the terms in the letter of intent or the performance agreement. The letter of intent and the performance agreement, among other things, set forth requirements for the improvement and renovation of the Rockville facility after the addition of the Land Rover dealership, while the Land Rover dealer agreement did not address this subject. Rather, the Land Rover dealer agreement addressed the franchisor-franchisee relationship between JLR and Manhattan, which permitted Manhattan to operate as a Land Rover dealer.

Additionally, we observe that the three agreements were submitted to Manhattan as a "package" in a single email transmission. Although Manhattan executed the letter of intent and the performance agreement two weeks before executing the Land Rover dealer agreement, all three agreements were required to be completed before Manhattan was authorized to begin

10

operating the Land Rover dealership at the Rockville facility. Further, Manhattan was unable to execute the Land Rover dealer agreement until the purchase of the franchise had been completed and the previous franchise owner had suspended its operations as a Land Rover dealer. Thus, although the three agreements were executed during the course of a two-week period, the parties treated the agreements as being part of a single transaction.

This conclusion is reinforced by Manhattan's conduct, which demonstrated that Manhattan intended that the letter of intent, the performance agreement, and Land Rover dealer agreement be construed and enforced together. The record establishes that despite the general integration clause in the Land Rover dealer agreement, Manhattan completed the work necessary to meet its first project milestone and attempted to negotiate an amended schedule for the remaining milestones contained in the letter of intent and the performance agreement. These actions show that Manhattan considered itself bound by the terms of the letter of intent and the performance agreement.

Based on the content of the three agreements at issue and on Manhattan's conduct, we conclude that the integration clause in the Land Rover dealer agreement did not cancel or supersede the letter of intent or the performance agreement. Accordingly, we hold that the district court did not err in concluding that Manhattan's failure to comply with the Business Builder Program

11

terms permitted JLR to suspend Manhattan's MSRP incentive payments, because the parties intended that all three documents remain in effect and be construed and enforced together.

B.

Manhattan next argues that the district court erred in awarding summary judgment to JLR on Manhattan's counterclaim. According to Manhattan, the record shows that JLR violated two Code provisions, Section 15-207 and Section 15-206.1.

With regard to Code § 15-207, Manhattan focuses on the statutory terms "require" and "coerce." Manhattan contends that the terms of the letter of intent and the performance agreement unlawfully "required" or "coerced" Manhattan to relocate the Lincoln Mercury dealership and to alter the Rockville facility in a manner that imposed a "substantial financial hardship."

We examine this statutory language in its relevant context. Under Maryland law, we review the plain language of the statute, giving the words their natural and ordinary meaning. Breslin v. Powell, 26 A.3d 878, 891 (Md. 2011). Pursuant to Code § 15-207(d), a distributor

> may not require or coerce a dealer, by franchise agreement or otherwise, or as a condition to the renewal or continuation of a franchise agreement, to:
>
> (1) Exclude from the use of the dealer's facilities a dealership for which the dealer has a franchise agreement to utilize the facilities; or

12

> (2) Materially change the dealer's facilities or method of conducting business if the change would impose a substantial hardship on the business of the dealer.

Md. Code, Transp. § 15-207(d).

This statute defines the term "require" as meaning a distributor's imposition "upon a dealer a provision not required by law or previously agreed to by a dealer in a franchise agreement." Md. Code, Transp. § 15-207(a)(3). The term "coerce" is defined in the statute as meaning "to compel or attempt to compel by threat of harm, breach of contract, or other adverse consequences." Md. Code, Transp. § 15-207(a)(2)(i). Also, under the Code, a "dealer" is defined as a "person in the business of buying, selling or exchanging vehicles." Md. Code, Transp. § 11-111.

Under the plain language of Code § 15-207(d), as the relevant terms are defined in the Code, a distributor may not "require" an existing dealer to accept additional or amended terms to a franchise agreement requiring the dealer to remove from its facilities another distributor's vehicles, a practice commonly known as "de-dualing." This statute also prohibits a distributor from requiring an existing dealer to alter the dealer's facilities in a manner that would cause the dealer substantial financial harm. A distributor also may not "coerce" an existing dealer to agree to terms compelling de-dualing or

13

alteration of the dealer's facilities in a manner that would cause the dealer substantial harm.

We find no merit in Manhattan's argument that JLR violated these statutory provisions, because the provisions were inapplicable to the parties' relationship at the time the three agreements were executed. As the statutory definitions of the terms "require" and "coerce" plainly illustrate, the conduct prohibited by Code § 15-207(d) presupposes that there is an existing franchise agreement between a distributor and dealer when the prohibited conduct occurs affecting a particular franchise. Here, however, Manhattan was not yet a Land Rover dealer when it agreed in the letter of intent to relocate Manhattan's Lincoln Mercury dealership and to renovate the Rockville facility as part of the parties' comprehensive agreement to authorize Manhattan as a Land Rover dealer. Therefore, neither JLR nor Land Rover N.A. had the existing contractual relationship with Manhattan required by the statute to render those distributors liable for "requiring" or "coercing" de-dualing, within the meaning of Code § 15-207(d).

Our analysis is not altered by the fact that at the time Manhattan entered into the performance agreement, Manhattan had an existing franchise relationship with Jaguar Cars. The terms in the performance agreement relating to removal of the Lincoln Mercury dealership and to renovation of the Rockville facility

14

did not address the existing dealership relationship Manhattan had with Jaguar Cars, but dealt with the different subject of Manhattan's anticipated addition of a Land Rover dealership to its Rockville facility.  Neither JLR nor Jaguar Cars required or compelled Manhattan to accept the contractual provisions of de-dualing and renovation, which were not imposed on Manhattan as an existing dealer but were bargained-for terms of the parties' agreement authorizing Manhattan to operate as a Land Rover dealer.  Thus, Manhattan's obligation to comply with duties that it freely assumed by contract cannot constitute "requirement" or "coercion" within the meaning of the statute.  Accordingly, we hold that the district court correctly concluded that the terms in the letter of intent and the performance agreement did not violate Code § 15-207(d).

Manhattan contends, nevertheless, that JLR violated Code § 15-206.1, by not acting in good faith when JLR required removal of the Lincoln Mercury dealership from the Rockville facility and suspended the MSRP incentive payments.  We conclude that this argument is not supported in the record.

Under Code § 15-206.1(b), a distributor must act in good faith in carrying out the provisions of a franchise agreement and in any conduct governed by the Code.  The statute defines "good faith" as "honesty in fact and the observance of

15

reasonable commercial standards of fair dealing in the trade." Md. Code, Transp. § 15-206.1(a).

The plain language of the letter of intent and the performance agreement established Manhattan's contractual obligation to remove the Lincoln Mercury dealership from the Rockville facility at least by July 1, 2008, irrespective whether the Land Rover dealership had attained a level of profitability. Further, the letter of intent and the performance agreement explicitly stated that execution of those agreements was conditioned on Manhattan's agreement to relocate the Lincoln Mercury dealership, and that any failure to do so could result in suspension of the MSRP incentive payments. Therefore, JLR did not violate Code § 15-206.1 merely by seeking to enforce the bargained-for terms of the letter of intent and the performance agreement.

## III.

In conclusion, we hold that the district court correctly determined that the challenged provisions in the letter of intent and the performance agreement are enforceable. Under the rules of the Business Builder Programs, Manhattan's failure to comply with the terms in those agreements permitted JLR to suspend the MSRP incentive payments. Additionally, the district court correctly concluded that JLR did not violate the Maryland

16

statutes at issue by enforcing JLR's agreements with Manhattan. Accordingly, we affirm the district court's award of summary judgment in favor of JLR.

AFFIRMED