PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANTONIA ROTA-MCLARTY,

*Plaintiff-Appellee,*

v.

SANTANDER CONSUMER USA,
INCORPORATED,

*Defendant-Appellant.*

No. 11-1597

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William D. Quarles, Jr., District Judge.
(1:10-cv-00908-WDQ)

Argued: September 20, 2012

Decided: November 28, 2012

Before SHEDD and DUNCAN, Circuit Judges, and
Timothy M. CAIN, United States District Judge for the
District of South Carolina, sitting by designation.

Reversed by published opinion. Judge Duncan wrote the opin-
ion, in which Judge Shedd and Judge Cain joined.

## COUNSEL

**ARGUED:** John A. Houlihan, EDWARDS WILDMAN PALMER, LLP, Boston, Massachusetts, for Appellant. Thomas Joseph Minton, GOLDMAN & MINTON, PC, Baltimore, Maryland, for Appellee. **ON BRIEF:** Thomas H. Wintner, EDWARDS ANGELL PALMER & DODGE, LLP, Boston, Massachusetts, for Appellant. Bernard T. Kennedy, THE KENNEDY LAW FIRM, Edgewater, Maryland, for Appellee.

## OPINION

DUNCAN, Circuit Judge:

Santander Consumer USA ("Santander") appeals from the district court's order denying its motion to compel arbitration and stay court proceedings of Antonia Rota-McLarty's ("Rota-McLarty") claims against it.[1] While finding that an enforceable arbitration agreement encompassing Rota-McLarty's claims existed, the district court nevertheless concluded that Santander had waived its right to enforce arbitration by its delay. After assuring ourselves of jurisdiction, we conclude the record does not support the district court's finding of waiver. We therefore reverse and remand with directions to refer the claims to arbitration.

I.

The relevant facts are few and undisputed. On July 5, 2007, Rota-McLarty, a Maryland resident, purchased a used car

---

[1]Rota-McLarty originally brought her claims against Drive Financial Services ("Drive"), a Texas corporation which no longer exists. Santander, an Illinois corporation with its principal place of business in Texas, is the successor by mergers to Drive, and has taken its place in the litigation. For simplicity, we refer to the lender solely as Santander.

from Easterns Automotive Group ("Easterns") in Rockville, Maryland. In completing that transaction, Rota-McLarty executed two contracts with Easterns. The first was a Buyer's Order, which provides the terms of the sale and contains an agreement to arbitrate disputes.

The second was a Retail Installment Sale Contract ("RISC"), which does not contain an arbitration provision. The RISC provides the financing terms for Rota-McLarty's loan and information about repossession rights and procedures. Additionally, the RISC contains an integration clause, which states: "This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding." J.A. 19. Santander pre-approved the financing terms, and Easterns assigned the RISC to Santander immediately after the sale.

Rota-McLarty returned the car, which she claimed was defective, to Easterns's lot in Maryland, having never made a payment on her loan. Santander sought collection of the outstanding debt after repossessing and selling the car at a loss.

## II.

Rota-McLarty filed a putative class action in state court against Santander on March 9, 2010, alleging violations of various Maryland consumer protection laws for undisclosed finance charges and other unfair business practices. On April 13, 2010, Santander removed the complaint to federal court on the basis of diversity. Santander filed an answer the next day, and within a month the parties had agreed on a bifurcated discovery schedule, whereby the first stage would focus on the issue of hidden finance charges, with class and other discovery to follow. During the brief discovery period that ensued, Santander took Rota-McLarty's deposition on both stage one and stage two issues, and Rota-McLarty took Easterns's deposition and sought production of various docu-

ments. One such document was a letter Easterns had received from Santander in 2007, detailing the terms of the RISC assignment, which Rota-McLarty asserts supports her hidden finance charge allegations.[2]

On September 30, 2010, Santander moved to compel non-class arbitration of Rota-McLarty's claims and to stay the proceedings in federal court. Santander claimed the delay in seeking arbitration was caused by uncertainty in the law regarding whether it would be forced into class arbitration, which was clarified by the Supreme Court's decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. ___, 130 S.Ct. 1758, 1775 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."). Santander waited longer, until a district court had applied *Stolt-Nielsen* in the consumer context, to file its motion.[3]

In denying Santander's motion, the district court deemed the underlying transaction purely intrastate in nature, and applied the Maryland Uniform Arbitration Act (the "MUAA"), Md. Code Ann., Cts. & Jud. Proc. §§ 3-201 *et seq.*, rather than the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-14. Concluding that the Buyer's Order and RISC must be read together despite an integration provision in the latter, the court found there was an enforceable arbitration agreement between Rota-McLarty and Santander, which encompassed her claims. Nonetheless, the court denied San-

---

[2]In the letter, Santander states it is sending a check to Easterns for Rota-McLarty's RISC for $15,143.07, even though the total "amount purchased" was $19,261.00. J.A. 109. Rota-McLarty argues this amount reveals a hidden finance charge, but Santander disagrees, asserting that the disparity represents an "acquisition fee" that need not be disclosed under Maryland law and, further, had already been produced by Santander in discovery.

[3]Specifically, Santander relied on *Jock v. Sterling Jewelers, Inc.*, 725 F. Supp. 2d 444, 450 (S.D.N.Y. 2010), which was later reversed, 646 F.3d 113 (2d Cir. 2011).

tander's motion on grounds that Santander had waived its right to compel arbitration through unjustified delay and by having participated significantly in discovery. Santander now appeals.

## III.

Santander argues that the district court erred in failing to apply the FAA and in finding waiver. Rota-McLarty disagrees, and also contests the district court's conclusion that a binding arbitration agreement existed between the parties. Before turning to the merits, however, we must first assure ourselves of our jurisdiction over this appeal.

## A.

Courts of appeal ordinarily may review only final decisions of district courts. *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 584 (4th Cir. 2012); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009); *see also* 28 U.S.C. § 1291. Although the district court's order denying Santander's motion to compel arbitration and stay proceedings is not a final decision, we may nevertheless exercise appellate jurisdiction if the order falls within an exception to the final judgment rule established by the FAA.

The FAA provides for appeals from, *inter alia*, orders "refusing a stay of any action under section 3 of this title,"[4] or "denying a petition under section 4 of this title[5] to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(A)-(B). Congress's purpose in creating appellate jurisdiction for these orders was to effectuate a "strong policy favoring arbitration" through

---

[4]Section 3 of the FAA allows the district court to stay proceedings pending arbitration, upon application of one of the parties. *See* 9 U.S.C. § 3.

[5]Section 4 allows a party to petition the district court for an order directing arbitration to proceed pursuant to an agreement. *See* 9 U.S.C. § 4.

appeal rules, whereby "an order that favors litigation over arbitration . . . is immediately appealable, even if interlocutory in nature." *Stedor Enters., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 730 (4th Cir. 1991).

Here, our determination of whether the district court's order falls within an exception comprises two steps. We must first decide whether the transaction is one that involves interstate commerce to which the FAA applies.[6] If so, we then examine whether Santander's motion did, in fact, adequately invoke §§ 3 or 4, thus giving us appellate jurisdiction under § 16 of the FAA.

1.

Turning first to the question of whether the parties' agreement falls within the scope of the FAA, we note that the reach of the statute is broad. It operates to enforce an arbitration provision included in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also* 13D Wright, Miller, & Cooper, Federal Practice and Procedure § 3569 (2008), where "commerce" means "commerce among the several States," 9 U.S.C. § 2. The Supreme Court has interpreted this provision as exercising the full scope of Congress's commerce-clause power. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77 (1995). Moreover, the term "evidencing a transaction" requires only that the transaction in fact involved interstate commerce, not that the parties contemplated it as such at the time of the agreement. *Id.* at 281.

---

[6]Application of the FAA requires demonstration of four elements: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). Because only the third element is in dispute here, we omit discussion of the others.

The district court's analysis of whether the underlying transaction is solely intrastate in nature consists of one sentence: "There is no indication that Rota-McLarty's transaction involved interstate commerce, and the parties agree that Maryland law governs their relationship." J.A. 129. We are constrained to disagree.

The underlying transaction here is simply a consumer credit arrangement between a citizen of one state and a financing company in another. Although diversity of citizenship—or lack thereof—is not by itself enough to determine the nature of a transaction, *see Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 978 n.4 (4th Cir. 1985) ("[T]he mere circumstance of diversity of citizenship between [the parties] is not sufficient to command the application of the [FAA]."), we need not rely solely on it here. The financing, which originated from a foreign state, was integral to Rota-McLarty's purchase of the used car from Easterns. We agree with sister circuits, which have concluded that reliance upon funds from a foreign source in a transaction is sufficient to implicate the FAA. *See, e.g.*, *Jenkins v. First Am. Cash Advance of Georgia*, 400 F.3d 868, 874-75 (11th Cir. 2005) ("payday loan" completed by a Georgia consumer in the Georgia office of loan company involved interstate commerce where the funds were approved and disbursed by a national bank based in South Dakota). Therefore, the FAA applies.

Our conclusion is bolstered by two additional factors. First, we have held that the FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction. *Maxum*, 779 F.2d at 978 n.4 ("Where . . . the party seeking arbitration alleges that the transaction is within the scope of the [FAA], and the party opposing application of the [FAA] does not come forward with evidence to rebut jurisdiction under the federal statute, we do not read into the [FAA] a requirement of further proof by the party invoking the federal law."). Santander has made the requisite initial showing, which Rota-McLarty has failed

to rebut. Indeed, she admits "the interstate nature of the transaction embodied in the RISC . . . should be hardly controversial," Appellee's Br. at 9, and we agree.[7]

Second, in deciding to apply the FAA, we need not identify any specific effect upon interstate commerce, so long as "in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (citation omitted). We agree with Santander that "the broad impact of consumer automobile lending on the national economy" is evident. Appellant's Br. at 28; *cf. Citizen's Bank*, 539 U.S. at 58 ("[W]ere there any residual doubt about the magnitude of the impact on interstate commerce caused by the particular economic transactions in which the parties were engaged, that doubt would dissipate upon consideration of the 'general practice' those transactions represent. No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress's power to regulate that activity pursuant to the Commerce Clause." (internal citation omitted)).

---

[7]Rota-McLarty contends that because the Buyer's Order contains a Maryland choice-of-law provision, Maryland law must govern the arbitration provision as well. *See* J.A. 17 ("This Agreement shall be governed and controlled in accordance with the laws of the State of Maryland.") Rota-McLarty's argument misunderstands several points of law. Unquestionably, a contract's general choice-of-law provision does not displace federal arbitration law if the contract involves interstate commerce. *See Porter v. Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 382 (4th Cir. 1998) ("The Supreme Court has . . . squarely rejected the argument that a federal court should read a contract's general choice-of-law provision as invoking state law of arbitrability and displacing federal arbitration law."); *Maxum*, 779 F.2d at 978. Thus, while the general choice-of-law provision invokes Maryland substantive law for issues of contract interpretation—including the validity, enforceability, or revocability of the arbitration agreement—and for Rota-McLarty's consumer protection claims, it is irrelevant to the decision whether the FAA applies.

For these reasons, we find that the underlying transaction relates to interstate commerce, and that the district court erred in declining to apply the FAA. We are thus assured that federal law supplies not only our procedural framework, but also the substantive law regarding arbitration. *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).

2.

We next address the narrower issue of whether Santander's motion adequately invoked §§ 3 or 4 of the FAA so as to create appellate jurisdiction under the statute's exception to the final judgment rule. Guided by our precedent in *Wheeling*, we find that it did.

Consonant with the approach taken by our sister circuits, *Wheeling* held that the proper inquiry focuses on substance rather than nomenclature. 683 F.3d at 586. In other words, we look to whether a motion evidences a clear intention to seek enforcement of an arbitration clause rather than on whether it adhered to a specific form or explicitly referenced §§ 3 or 4. *Id.* Of course, "[t]he first, simplest, and surest way to guarantee appellate jurisdiction under § 16(a) is to caption the motion in the district court as one brought under FAA §§ 3 or 4." *Id.* (quoting *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1385 (10th Cir. 2009)). But requiring such a caption "would violate the spirit of notice pleading embodied in our Federal Rules of Civil Procedure." *Conrad*, 585 F.3d at 1385. Instead, we

> look beyond the caption to the essential attributes of the motion itself. The goal of this inquiry is to determine whether it is plainly apparent from the four corners of the motion that the movant seeks only the relief provided for in the FAA, rather than any other judicially-provided remedy.

*Id.*

Specifically, in examining the four corners of the motion, our focus is on the relief requested. If the essence of the requested relief "'is that the issues presented be decided exclusively by an arbitrator and not by any court,'" the denial of that motion is appealable under § 16. *Wheeling*, 683 F.3d at 585 (citation omitted). If, however, the requested relief would be "'a judicial remedy that is inconsistent with the position that the issues involved may be decided only by the arbitrator,'" then the motion should no longer be viewed as "proceeding exclusively under the FAA," and interlocutory review under § 16 is not proper. *Id.* (citation omitted).

Guided by *Wheeling*, we conclude the denial of Santander's motion is immediately appealable. Although the caption—"motion to compel arbitration and stay proceedings"—does not specifically reference §§ 3 or 4, it clearly invokes the relief provided in those sections. Further, Santander's memorandum in support of that motion asks the court to "grant Santander's motion, compel non-class arbitration of Rota-McLarty's claims, and stay all other aspects of this action pending further order of the Court." J.A. 95. It does not, by contrast, request any "'judicial remedy that is inconsistent with the position that the issues involved may be decided only by the arbitrator.'" *Wheeling*, 683 F.3d at 586 (citation omitted). Rota-McLarty has not pointed to any authority other than the FAA upon which Santander could have intended to rely in seeking to compel arbitration and stay litigation, much less shown how the relief Santander sought is inconsistent with the position that Rota-McLarty's claims must be decided by an arbitrator.

For these reasons, we find that the four corners of Santander's motion make it abundantly clear Santander sought enforcement of the arbitration agreement. Denial of that motion is therefore immediately appealable.

B.

Turning now to the substantive issues on appeal, we examine whether a valid arbitration agreement exists between the

parties, and, if so, whether Santander was in default of its right to enforce that agreement.

### 1.

The question of whether an enforceable arbitration agreement exists between Rota-McLarty and Santander is a matter of contract interpretation governed by state law, which we review de novo. *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010).

We must first determine whether Santander, as an assignee only to the RISC, which contains an integration clause providing that it is the complete agreement between the parties, and not the Buyer's Order, which includes the arbitration language, could invoke arbitration. Relying on Maryland cases instructing courts to look to the intent of the parties to determine the preclusive effect of an integration clause, the district court found that the circumstances surrounding the transaction here indicated that the parties did not intend the RISC to be a final and complete integration of their agreement. Rather, they intended that the two agreements should be interpreted together. Further, the court concluded that Rota-McLarty's claims fell within the scope of the arbitration provision. Rota-McLarty challenges both conclusions. We consider each in turn.

### a.

With respect to the integration clause, Rota-McLarty essentially repeats her arguments before the district court.[8] She

---

[8]Rota-McLarty does advance a novel theory in support of integration on appeal, premised on Md. Code Regs. § 11.12.01.15, which provides that "every vehicle sales contract or agreement shall be evidenced by an instrument in writing containing all of the agreements of the parties." *See* Appellee's Br. at 19. She seems to argue that the regulation requires one document by itself to constitute the parties' agreement, and thus we must read the Buyer's Order alone. Even if this argument is not waived, Rota-McLarty fails to provide any authority for her interpretation of the cited regulation, nor for the proposition that this regulation supplants an entire established body of Maryland law governing contract interpretation.

relies heavily on *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs., Ltd.*, 695 A.2d 153 (Md. 1997), which she asserts "cannot be distinguished on any principled basis" from the instant matter. Appellee's Br. at 17. In that case, the court examined two contracts. The first, between a condominium developer and a construction contractor, contained an arbitration provision, while the second, the contractor's performance bond with a bonding company, did not. The court declined to allow the bonding company to enforce the arbitration provision contained in the construction contract, even though the bond incorporated that contract by reference. *Hartford*, 695 A.2d at 155.

We disagree with Rota-McLarty that the circumstances in that case mirror those in the case at hand. Far from indistinguishable, *Hartford* is inapposite because Santander does not rely on language in the RISC, but instead points to language in the Buyer's Order itself, which states that it applies to the assignee of the RISC, including several times in the arbitration provision.[9] Thus, we do not have the same concerns as the court in *Hartford* that the parties did not intend the arbitration provision, specifically, to govern their agreement.

The facts in this case support the district court's finding that the Buyer's Order and RISC were made as part of a single transaction, and should be interpreted together under Maryland law. *See Shoreham Developers, Inc. v. Randolph Hills, Inc.*, 235 A.2d 735, 739 (Md. 1967) (explaining that the coverage of an integration clause is a matter of interpretation, and does not "exclude reading the instruments together [where] the parties did not intend the sales contract standing

---

[9]For example, the arbitration provision states: "The parties understand that they have a right or opportunity to litigate disputes through a Court, but that they prefer to resolve their disputes through arbitration, except that the Dealer (or the Assignee of any Retail Installment Sales Contract) may proceed with Court action in the event the Purchaser fails to pay any sums due under the Agreement." J.A. 18.

by itself to be a final and complete integration of the agreed upon terms"); *Jaguar Land Rover North America, LLC v. Manhattan Imported Cars, Inc.*, 738 F. Supp. 2d 640, 648 (D. Md. 2010) ("Whether an agreement is integrated and the effect of an integration clause are preliminary questions of interpretation determined by the court." (citing *Shoreham*)), *aff'd*, 477 Fed. App'x 84 (4th Cir. 2012). The Buyer's Order, which is expressly "conditioned upon approval of [the] retail installment sale contract," J.A. 132, and defines the "Agreement" collectively with other documents made in connection with the Buyer's Order, is insufficient on its own to "explain the full extent of the parties' obligations," *Jaguar Land Rover*, 738 F. Supp. 2d at 649. For these reasons, we find Rota-McLarty has failed to establish that the RISC's integration clause prevents reading both contracts together as a single agreement.

b.

Rota-McLarty's second argument, that Santander should not be able to enforce the arbitration agreement because it contains a carve-out for assignees of the RISC, is similarly unconvincing.[10] The flaw in her interpretation of the arbitration clause becomes evident when the carve-out is viewed in the context of the arbitration clause:

> A Dispute is any question as to whether something must be arbitrated, as well as . . . any purely monetary claim greater than $1,000 in the aggregate, whether contract, tort, or other, arising from (1) the negotiation of and terms of the Buyer's Order, (2) any service contract or Insurance product, or (3) any

---

[10]Rota-McLarty also argues that the carve-out renders the promise illusory and thus that the agreement is unenforceable for lack of mutuality. However, because we ultimately reject her interpretation of the carve-out, we need not address her mutuality argument, which depends upon reading the clause to exempt Santander from arbitration.

> retail installment sale contract or lease (but this arbitration provision does not apply to and shall not be binding on any assignee thereof).

J.A. 18 (enumeration added). Basic principles of contract interpretation instruct us to look first to the plain meaning of the contract's terms, and also to give meaning to each word used and avoid constructions that render language meaningless, superfluous, or contradictory. *See DIRECTV, Inc. v. Mattingly*, 829 A.2d 626, 637 (Md. 2003).

Here, the parenthetical phrase that constitutes the carve-out follows, and modifies, a list of three types of monetary claims that are subject to arbitration. The parenthetical exempts the forced arbitration of any "purely monetary claim greater than $1,000" by an assignee of that claim. It does not pertain to assignees of the RISC in particular; rather, it indicates that a person to whom an otherwise-qualifying monetary claim has been assigned cannot enforce arbitration. Santander is not the assignee of any monetary claim, but instead is the assignee of the entire agreement embodied in the RISC. The interpretation advanced by Rota-McLarty not only ignores the structure of the sentence containing the carve-out, but it also operates at odds with the remainder of the arbitration provision, which contemplates the binding nature of the agreement on Santander by equating the "Dealer" and the "assignee of any [RISC]" in several places. *See, e.g.*, J.A. 18 ("[A]ll disputes . . . shall be resolved by binding arbitration by one arbitrator located in the Dealer's area in the state of Maryland selected by the Dealer (or the assignee of any [RISC]) with the consent of the Purchaser."). We thus find nothing in the language of the arbitration provision to indicate it was not intended to be enforceable by Santander as assignee of the RISC.

2.

Finally, we examine the district court's finding that Santander waived its right to enforce the arbitration agreement. We

review the district court's decision to deny Santander's arbitration request de novo, with deference to its underlying factual findings, *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009), and conclude that the court made several errors.

Applying Maryland arbitration law, the district court found that whether a party has waived its right to arbitrate depends on "the extent of its participation in judicial proceedings, including whether an answer has been filed; whether there was a legitimate reason for the participation; and whether the delay in seeking arbitration prejudiced the other party." J.A. 137. Additionally, the court proclaimed that the "'belated insistence on arbitration [that] has all the markings of a simple strategic decision' is improper." *Id.* (quoting *Abramson v. Wildman*, 964 A.2d 703, 710 (Md. Ct. Spec. App. 2009)). The district court then concluded that Santander had waived its right to arbitrate for four reasons: (1) Santander's delay in moving to compel arbitration; (2) Santander's participation in "discovery about Rota-McLarty's allegations of hidden finance charges, which included exchanging hundreds of pages of documents, serving and responding to interrogatories, and taking Rota-McLarty's deposition on *all* allegations," J.A. 138; (3) Santander's strategic decision based on its fear that class discovery would have been compelled prior to *Stolt-Nielsen* "is not a legitimate reason for engaging in litigation rather than immediately seeking arbitration," *id.*; and (4) Santander's failure to rebut Rota-McLarty's contention that Santander had delayed in order to use litigation to "fully evaluate [Rota-McLarty's] case," *id.* We must reject the district court's reliance on each of these findings, for the reasons that follow.

As a threshold matter, we note the district court erred by applying the wrong law. Under the FAA, a party may lose its right to compel arbitration if it "is in default in proceeding with such arbitration." 9 U.S.C. § 3. This principle of "default" is akin to waiver, but not identical. Unlike some waiver

doctrines, "the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred," *Maxum*, 779 F.2d at 981, and the party opposing arbitration bears a heavy burden to prove default, *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996).[11]

Generally, a litigant defaults on its right to invoke the FAA where it "'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" *Forrester*, 553 F.3d at 343 (citation omitted). "Where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987) (internal quotation marks omitted). The dispositive determination is whether the opposing party has suffered actual prejudice. *Microstrategy, Inc. v. Lauricia*, 268 F.3d at 249 (citing *Fraser*, 817 F.2d at 252); *see also Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 (4th Cir. 2004). Two factors specifically inform our inquiry into actual prejudice: (1) the amount of the delay; and (2) the extent of the moving party's trial-oriented activity. *Microstrategy*, 268 F.3d at 249. Notably, the moving party's reason for delay is not relevant to the default inquiry under our precedent.[12] We consider each of the two factors in turn.

---

[11]Accordingly, we employ our recent approach of substituting the term "default" for the term "waiver" in the FAA context, in order "to achieve uniformity and prevent confusion." *Wheeling*, 683 F.3d at 586 n.3.

[12]We are not unsympathetic to Rota-McLarty's position that parties should not be allowed to game the system and delay seeking arbitration to see how things go in federal court and thereby get "a second bite at the apple." *In re Mirant Corp.*, 613 F.3d 584, 590 (5th Cir. 2010). As some of our sister circuits have pointed out in cases cited by Rota-McLarty,

a.

First, in comparison to our decisions considering the issue, the length of delay in this case was relatively short. At most, Santander waited six and a half months—from the date Rota-McLarty filed her complaint in state court—to file its motion to compel arbitration and stay proceedings in federal court.[13] We have previously held that a delay of several months, without more, is insufficient to demonstrate the opposing party

---

there are many reasons to favor the earliest possible selection of forum, including efficiency, preservation of judicial resources, and fairness. *See, e.g.*, *Cabinetree of Wisconsin v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (8th Cir. 1995) (noting that a party's desire to "weigh its options" in deciding whether to seek to compel arbitration while the litigation goes on is "the worst possible reason for delay" and amounts to "want[ing] to play heads I win, tails you lose"); *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (default may be established if the opposing party can show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts"). However, in keeping with the strong policy in favor of arbitration established by the FAA, the Fourth Circuit has not expanded the default analysis to include consideration of a party's knowledge or motive. And, even under such a test, Rota-McLarty has failed to establish Santander was attempting to game the system, such as by seeking arbitration after the district court's unfavorable disposition of a motion or discovery dispute.

[13]In its reply brief, Santander calculated its delay in seeking arbitration as "approximately six month[s]," Reply Br. at 20, but at oral argument urged us not to "start the clock" until the date it received the district court's decision applying *Stolt-Nielsen* to consumer transactions. We reject that late-asserted proposition as unsupported by Fourth Circuit precedent. *See Forrester*, 553 F.3d at 343 (delay in seeking arbitration began when the moving party was on notice of facts that should have made it aware the opposing party intended to rely on a theory placing its claim within the scope of the arbitration agreement); *Patten*, 380 F.3d at 205 (using date moving party became aware of arbitration clause as starting point); *Fraser*, 817 F.2d at 252 (declining to excuse part of delay based on moving party's argument that "a motion to compel would have been futile" prior to a change in the law); *Maxum*, 779 F.2d at 982 (calculating delay starting from the filing of the operative second amended complaint).

suffered actual prejudice. *See, e.g.*, *Patten*, 380 F.3d at 205 (no prejudice inherent in four-month delay); *Maxum*, 779 F.2d at 982 (same, with three-month delay); *cf. Forrester*, 553 F.3d at 343-44 (default proper where litigation had proceeded for over two years before the moving party sought arbitration); *Fraser*, 817 F.2d at 252-53 (same, with four-year delay).

Here, nothing in the record supports a finding that Rota-McLarty was prejudiced by the length of the delay itself. Her general assertion that she "committed substantial resources to the case on the premise that the Court would have an opportunity to rule on a motion for class certification," Appellee's Br. at 29, is both unsubstantiated and unconvincing. Although incurring significant expense as a result of extended litigation can be part of actual prejudice, such cases usually involve resources expended specifically in response to motions filed by the party who later seeks arbitration. *See, e.g.*, *Fraser*, 817 F.2d at 252 (prejudice found in part because opposing party "had to respond to a number of potentially damaging motions, including a motion for partial summary judgment and three motions to dismiss.") And where, as here, Rota-McLarty has provided no evidentiary support for her claimed "significant expense," this argument fails entirely. *Patten*, 380 F.3d at 208 (declining to base prejudice on costs incurred where the opposing party failed to adequately prove the expense). Consequently, we conclude the district court erred to the extent it based its determination of default on the length of delay.[14]

b.

The second factor in our prejudice inquiry looks to the nature and extent of Santander's litigation activities. Here,

---

[14]The district court described the length of Santander's delay as "six months after Rota-McLarty sued, and five months after filing an answer." J.A. 137. Thus, it was not the district court's factual finding that was erroneous, but instead its legal conclusion that the length of delay weighed in favor of finding prejudice.

Santander "utilized the litigation machinery" in a few—mostly minimal—ways: it removed the complaint to federal court, filed an answer, proposed a bifurcated discovery plan, took Rota-McLarty's deposition on both phase one and phase two issues, and waited for clarity in the law in order to avoid class arbitration. No dispositive motions were filed.[15] For her part, Rota-McLarty engaged in some discovery as well, which resulted in Easterns's production of a document that Rota-McLarty styles as a smoking gun proving her claim of an undisclosed finance charge. Rota-McLarty asserts these activities support a finding of prejudice because Santander proposed a two-phase plan that limited her discovery rights, while ignoring those limitations itself by taking her deposition on both phases, and exploiting pre-trial discovery not available in arbitration.

Like the district court, Rota-McLarty fails to tether her discussion of Santander's litigation activities to any actual prejudice. She does not explain how either her deposition or the document produced by Easterns would be to Santander's advantage, or unavailable, in arbitration. Neither the district court nor Rota-McLarty specified what aspect of Rota-McLarty's litigation strategy was revealed,[16] or what benefit Santander has gained through litigation at Rota-McLarty's expense, thereby prejudicing her. The mere participation in discovery is not sufficient to indicate default. *See Maxum*, 779 F.2d at 982 (finding opposing party was not prejudiced by moving party's attendance at depositions, even though it may have benefited for purposes of later arbitration proceeding, and "declin[ing] to create a rule that would require a party

---

[15]Whether a party was required to respond to dispositive motions may factor into our prejudice analysis, although we have "counsel[ed] against adopting a bright line rule that the mere filing of a dispositive motion on the merits is inherently prejudicial." *Wheeling*, 683 F.3d at 590.

[16]The district court, still without explanation, went so far as to accept Rota-McLarty's apparently uncontested assertion that Santander had been able "to fully evaluate her case." J.A. 138.

seeking arbitration to avoid a finding of default by ignoring court-ordered discovery deadlines"). Consequently, Rota-McLarty has failed to establish the prejudice necessary to justify finding Santander defaulted on its right to enforce the arbitration agreement under the FAA. Rota-McLarty's claims should be sent to arbitration pursuant to the parties' agreement.

## IV.

For the foregoing reasons, the order of the district court is

*REVERSED*.