*Clifford Cain, Jr. v. Midland Funding, LLC*, No. 45, September Term, 2016, Opinion by Adkins, J.

**CONTRACTS — ARBITRATION CLAUSE — WAIVER:** A debt buyer waived its right to arbitrate a debtor's claims for unlawful debt collection practices when it brought a collection action against the debtor in court. When the debt buyer obtained a judgment against the debtor in district court, it acted inconsistently with an intent to enforce the arbitration clause, and therefore waived the right to arbitrate any "related claims" under *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294 Md. 443 (1982). The debt buyer's claims for declaratory and injunctive relief, pre- and post-judgment costs, unjust enrichment, and violations of Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act arose from the debt buyer's collection action, and thus constituted "related claims." Therefore, the debt buyer waived its right to arbitrate these claims.

Circuit Court for Baltimore City
Case No.:  24-C-13-004869
Argued: January 9, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 45

September Term, 2016

CLIFFORD CAIN, JR.

v.

MIDLAND FUNDING, LLC

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Getty
Harrell, Glenn T., Jr.  (Senior Judge,
    Specially Assigned),

JJ.

Opinion by Adkins, J.
Getty and Harrell, JJ., dissent.

Filed: March 24, 2017

Contractual promises to arbitrate future disputes—in which parties forfeit their right to a trial in court and by a jury—have proven to be controversial. In this appeal we deal with an arbitration clause that seeks to preserve for a lender the right to sue a credit card debtor in small claims court, but insist on arbitration of all other claims relating to the debtor's account. Here, the lender's assignee, while operating as an unlicensed debt collector, obtained a $4,520.54 judgment against the debtor in the District Court of Maryland, sitting in Baltimore City. The assignee now seeks to arbitrate the debtor's later-filed class action suit collaterally attacking the judgment based on violations of Maryland consumer protection laws. We address whether the assignee, in pursuing its earlier district court suit, waived its right to arbitrate the debtor's claims.

## FACTS AND LEGAL PROCEEDINGS

In 2003, Clifford Cain, Jr., opened an AT&T Universal Savings and Rewards Card account with Citibank. Cain's contract with Citibank included an arbitration provision that allowed either party to "elect mandatory, binding arbitration for any claim, dispute, or controversy between [Cain] and [Citibank]." Additionally, it provided that the arbitration clause would survive "any transfer, sale or assignment of [Cain's] account, or any amounts owed to [his] account, to any other person or entity." In 2007, Cain stopped making payments on his Citibank account. In 2008, Citibank sold all of the rights, title, and interest in Cain's account to Midland Funding, LLC ("Midland").

On March 30, 2009, Midland filed a small claims action against Cain in the District Court of Maryland, sitting in Baltimore City, for the outstanding balance on his Citibank account ("the collection action"). The court entered a default judgment against Cain for

$4,520.54. Under the Maryland Collection Agency Licensing Act ("MCALA"), with limited exceptions, companies doing business as a "collection agency" must be licensed by the State. Md. Code (1957, 2015 Repl. Vol.), § 7-301 of the Business Regulation Article ("BR").[1] Although the MCALA required Midland to be licensed when it brought suit against Cain, it did not become licensed until almost a year later.[2]

On June 23, 2013, the Court of Special Appeals issued an opinion allowing debtors to collaterally attack judgments obtained by unlicensed collection agencies. In *Finch v. LVNV Funding LLC*, 212 Md. App. 748 (2013), the intermediate appellate court held that a "judgment entered in favor of an unlicensed debt collector constitutes a void judgment as a matter of law." *Id.* at 764. Thus, "appellants may collaterally attack these judgments in a circuit court action." *Id.*

---

[1] Maryland Code (1957, 2015 Repl. Vol.), § 7-301 of the Business Regulation Article ("BR"), provides:

**§ 7-301. License required; exceptions.**

> (a) *In general.* — Except as otherwise provided in this title, a person must have a license whenever the person does business as a collection agency in the State.

> (b) *Exceptions.* — This section does not apply to:
> (1) a regular employee of a creditor while the employee is acting under the general direction and control of the creditor to collect a consumer claim that the creditor owns; or
> (2) a regular employee of a licensed collection agency while the employee is acting within the scope of employment.

[2] The Maryland Collection Agency Licensing Act ("MCALA") defines a "collection agency," in relevant part, as "a person who engages directly or indirectly in the business of . . . collecting a consumer claim the person owns, if the claim was in default when the person acquired it." Md. Code (1957, 2015 Repl. Vol.), BR § 7-101(c)(1)(ii).

On July 30, 2013, Cain filed a class action complaint against Midland in the Circuit Court for Baltimore City for its unlawful debt collection practices. Cain argued that the judgments Midland obtained against him and the other class members were void under *Finch*. He brought claims for declaratory and injunctive relief related to the enforcement of the void judgments, unjust enrichment, and violations of the Maryland Consumer Debt Collection Act ("MCDCA"), Maryland Code (1957, 2013 Repl. Vol.), § 14-202(8) of the Commercial Law Article ("CL"),[3] and the Maryland Consumer Protection Act, Maryland Code (1957, 2013 Repl. Vol., 2016 Supp.), CL § 13-301(14)(iii).[4] Cain requested a money judgment "for violations of the MCDCA . . . and for purposes of a sum certain directly related to the judgment sums, pre- and post-judgment interest and costs (including attorney's fees)."

Shortly after Cain brought suit, Midland and Cain filed a consent motion to stay the class action pending the appeal of *Finch* to this Court. The Circuit Court granted the stay. On October 8, 2013, this Court denied *certiorari* in *Finch*, and two weeks later the Circuit Court lifted the stay in Cain's class action. Midland then moved to compel arbitration and stay the court proceedings,[5] or, alternatively, dismiss Cain's complaint. The Circuit Court

---

[3] Maryland Code (1957, 2013 Repl. Vol.), § 14-202(8) of the Commercial Law Article ("CL") prohibits debt collectors from "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist."

[4] Maryland Code (1957, 2013 Repl. Vol., 2016 Supp.), CL § 13-301(14)(iii) defines a violation of the Maryland Consumer Debt Collection Act, including CL § 14-202(8), as an "[u]nfair or deceptive trade practice."

[5] Midland moved to compel arbitration and stay the proceedings under Maryland Code, (1957, 2013 Repl. Vol.), §§ 3-202, 3-207, and 3-209 of the Courts and Judicial

stayed discovery and held a trial on the existence of an arbitration agreement between Cain and Midland. After finding that such an agreement did exist, the Circuit Court granted Midland's motion to compel arbitration. The Circuit Court rejected Cain's argument that Midland waived its right to arbitrate when it brought its 2009 collection action against Cain.[6]

Cain appealed to the Court of Special Appeals, which affirmed. The intermediate appellate court held that Midland did not waive its right to arbitrate by pursuing a small claims action against Cain, seeking court approval of two class settlements in *Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013), or filing a consent motion to stay Cain's class action pending the appeal of *Finch*. *Cain v. Midland Funding, LLC*, 2016 WL 1597179, at *13 (Apr. 21, 2016). It concluded that the Circuit Court properly granted Midland's motion to compel arbitration.[7] *Id.* at *14.

We granted *certiorari* to answer the following question:[8]

> Did Midland waive its contractual right to arbitrate Cain's claims by either (1) filing a collection action against him in

Proceedings Article ("CJP"), which provide procedures for judicial enforcement of arbitration agreements.

[6] Neither Midland nor Cain argued that the question of waiver was for the arbitrator to decide, rather than the court.

[7] The Court of Special Appeals also addressed the question of whether the arbitration clause at issue merged into the 2009 collection judgment and, therefore, was no longer effective. *Cain v. Midland Funding, LLC*, 2016 WL 1597179, at *8–11 (Apr. 21, 2016). The court held that the arbitration clause did not merge into the judgment. *Id.* at *11. Neither party has appealed this aspect of the court's decision.

[8] We have consolidated and rephrased the two questions presented in Cain's Petition for a Writ of Certiorari. Cain's Petition included the following questions:

4

2009 for outstanding credit card debt, or (2) filing a consent motion to stay the current proceeding pending the appeal of *Finch*?

Because we answer this question in the affirmative, we shall reverse the judgment of the Court of Special Appeals.

## STANDARD OF REVIEW

The parties disagree on the appropriate standard of review for this case. Cain argues that we should review the Circuit Court's determination that Midland did not waive its contractual right to arbitrate without deference. He contends that the question of whether Midland's 2009 collection action was "sufficiently related" to the claims before us to constitute a waiver of the right to arbitrate is a question of law that we should review afresh. By contrast, Midland argues that the question of whether it waived its right to arbitrate is a factual inquiry that we should review only for clear error.

------

1. Did the Court of Special Appeals err in concluding that a debt buyer's pattern of filing thousands of collection actions in Maryland courts, and obtaining judgments in those actions, was unrelated to a later putative class action seeking a judicial declaration that those earlier judgments were void and disgorgement of the money obtained through the judgments, thus finding the doctrine of waiver inapplicable and permitting the debt buyer to compel arbitration on an individual basis?

2. In concluding that no waiver of the right to arbitrate had occurred, did the Court of Special Appeals err in disregarding the tactical timing of the debt buyer's motion to compel arbitration, which it filed only after this Court denied *certiorari*, and thus made final and binding, a Court of Special Appeals opinion in a related case that was adverse to the debt buyer's litigation position?

5

When the determination of waiver turns on factual analysis, we inquire whether that finding was clearly erroneous. *See Brendsel v. Winchester Constr. Co.*, 392 Md. 601, 618–19 (2006) (applying clearly erroneous standard of review to question of whether a party waived the contractual right to arbitrate); *BarGale Indus., Inc. v. Robert Realty Co.*, 275 Md. 638, 646 (1975) (applying clearly erroneous standard to question of whether a party waived contract provision requiring minimum mortgage loan). But when a circuit court decision is premised on a conclusion of law, we review that determination without deference. *Wholey v. Sears Roebuck*, 370 Md. 38, 48 (2002). Thus, when questions of waiver turn on law rather than fact, we ask whether the trial court's decision was legally correct. *Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 588 (2006) (reviewing trial court's decision that a party waived her right to a jury trial by signing arbitration agreement without deference); *Sears, Roebuck & Co. v. Gussin*, 350 Md. 552, 559–67 (1998) (implicitly conducting *de novo* review of whether debtor waived the statutory accountant-client privilege).

This approach mirrors that of federal courts, which review legal conclusions that a party waived its right to arbitration without deference to the trial court. *See, e.g.*, *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 9 (1st Cir. 2005) ("Given the nature of the issues in this case, the primary of which is waiver, our review of the district court's denial of a motion to compel arbitration and stay judicial proceedings is de novo."); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004) ("We review whether a party's conduct amounts to a waiver of arbitration *de novo*, but we review any factual findings underlying the district court's waiver determination for clear error." (citation

6

omitted)); *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001) (same); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir. 1992) (conducting "plenary" review of trial court decision to deny motion to stay proceedings and compel arbitration).

Here, the determination of whether Midland waived its right to arbitrate depends on two questions of law: (1) whether Midland had the option to arbitrate its 2009 collection action under its contract with Cain; and (2) whether, under *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 294 Md. 443 (1982), the 2009 collection action is "related" to Cain's current claims against Midland and thus constituted a waiver of the right to arbitrate.[9] As to the first question, "[t]he interpretation of a written contract

---

[9] Cain's credit card agreement contains a choice of law provision which states that federal law and South Dakota law govern the agreement. As we will establish, *infra*, federal law does not apply in this case. And neither Cain nor Midland argued that South Dakota law applies—they advanced arguments under Maryland law. When parties assume that Maryland law applies, this Court has the discretion to accept that assumption. *Felland Ltd. P'ship v. Digi-Tel Commc'ns, LLC*, 384 Md. 520, 530 n.1 (2004) ("[T]his Court could, in its discretion, . . . accept for purposes of this case the parties' assumption that Maryland scope of employment law controls." (citations omitted)); *see also Beale v. Am. Nat. Lawyers Ins. Reciprocal*, 379 Md. 643, 651–52 n.5 (2004) (declining to apply another state's law because the case proceeded in the trial court on the assumption that Maryland law applied and a petition for writ of *certiorari* was granted on that basis); *Frericks v. Gen. Motors Corp.*, 274 Md. 288, 296–97 (1975) (same). Here, both parties and the Circuit Court proceeded on the assumption that Maryland law governs the issue of waiver of the right to arbitrate. Because both parties advanced arguments under Maryland law as to the waiver issue, we will exercise our discretion and apply the law of our State.

Cain's credit card agreement also contains a "non-waiver" clause, which states, "We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them." But Midland does not contend that this provision applies here. Moreover, the Court of Appeals has held that a party can waive a contractual right even though the contract contains an express non-waiver provision. *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 125 (2011). "Waiver of a non-waiver

is ordinarily a question of law for the court and, therefore, is subject to *de novo* review by an appellate court." *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 250 (2001) (citations omitted). As to the second, when a trial court "order involves an interpretation and application of Maryland . . . case law, our Court must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review." *Walter v. Gunter*, 367 Md. 386, 392 (2002). Thus, we will review the trial court's determination that Midland did not waive its right to arbitrate without deference.

## DISCUSSION

The arbitration agreement between Cain and Midland states that it is "governed by the Federal Arbitration Act." Section 2 of the Federal Arbitration Act ("FAA") provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[10] 9 U.S.C. § 2 (2012). The United States Supreme Court has described § 2 as the representation of "a

---

clause may be shown through the same actions that prove waiver of the contract clause at issue." *Id.* at 129. Therefore, if Midland waived its right to arbitrate Cain's claims by pursuing the 2009 collection action, it also waived the non-waiver provision.

[10] We are aware that federal circuit courts, and at least one state court, address the question of waiver under § 3 of the Federal Arbitration Act ("FAA") rather than § 2. *See, e.g.*, *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 12–13 (1st Cir. 2005) (collecting federal cases); *Hudson v. Citibank (S. Dakota) NA*, 387 P.3d 42 (Alaska 2016). Section 3 permits federal courts to stay a proceeding pending arbitration if "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (2012). But in state courts, state court procedures govern petitions for a stay of proceedings. *See Southland Corp. v. Keating*, 465 U.S. 1, 16 n.10 (1984) ("[W]e do not hold that §§ 3 or 4 of the [FAA] apply to proceedings in state courts."). Moreover, Midland filed its motion to compel arbitration pursuant to the Maryland Uniform Arbitration Act, not the Federal Arbitration Act. *Supra*, note 5. Thus, § 3 of the FAA does not apply in this case, and we will analyze the question of waiver under § 2.

8

liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."[11] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). But the Supreme Court has instructed state courts to apply state contract law to arbitration clauses when enforceability is at issue. *Perry v. Thomas*, 482 U.S. 483, 492–93 n.9 (1987). It has explained that in response to judicial non-enforcement of arbitration clauses, Congress passed the FAA to elevate arbitration agreements to "the same footing as other contracts, where [they] belong." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219 (1985) (quoting H.R. Rep. No. 96, at 1 (1924)). Therefore, under the FAA, "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry*, 482 U.S. at 493 n.9 (emphasis in original). This body of law includes "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Because waiver is a "generally applicable contract defense," we analyze whether the arbitration clause was waived, and is therefore unenforceable, under state—not federal—law. As the U.S. Court of Appeals for the Ninth Circuit has explained, under the FAA, "contract-based challenges" to the enforcement of an arbitration clause, such as waiver, "are governed by applicable state law." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121, 1124 (9th Cir. 2008) (holding that the federal district court erred in applying

---

[11] Similarly, the Maryland Uniform Arbitration Act, found in Maryland Code (1957, 2013 Repl. Vol.), CJP §§ 3-201 through 3-234, "expresses [state] legislative policy favoring enforcement of agreements to arbitrate." *Cheek v. United Healthcare of the Mid-Atl., Inc.*, 378 Md. 139, 146 (2003) (citation omitted).

federal law to the question of waiver); *see also Walther v. Sovereign Bank*, 386 Md. 412, 423 (2005) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984)) (applying Maryland law to the question of whether arbitration agreement is unconscionable and therefore unenforceable); *Sanderson Farms, Inc. v. Gatlin*, 848 So. 2d 828, 835, 837–38 (Miss. 2003) (applying state law to question of whether party waived a contractual right to arbitrate governed by the FAA because waiver is a "usual defense[ ] to a contract"); *Parsons v. Halliburton Energy Servs., Inc.*, 785 S.E.2d 844, 853 (W. Va. 2016) (applying state law to determine whether party waived right to arbitrate because, under the FAA, the "rights and liabilities of the parties are controlled by the state law of contracts" (citation omitted)).[12]

Under Maryland law, the waiver of the contractual right to arbitrate "may result from an express agreement or be inferred from circumstances." *BarGale*, 275 Md. at 643. To waive the right to arbitrate without express agreement, a party must take action "inconsistent with an intention to insist upon enforcing" the arbitration clause. *Id.* In *Frank*, we addressed for the first time the question of "whether participation as a party in a judicial proceeding constitutes a waiver of the right to arbitrate issues raised and/or decided in that proceeding." 294 Md. at 449. We concluded that it did, but that such a waiver did not extend to "other **unrelated issues** arising under the contract." *Id.* at 450 (emphasis added). Here, we must first determine whether Midland could have arbitrated its 2009 collection action. If so, we then must address whether Midland's 2009 collection action is related to Cain's claims under the standard set forth in *Frank*, and thus constituted

---

[12] *But see Singer v. Jefferies & Co.*, 575 N.E.2d 98, 102–03 (N.Y. 1991) (applying federal law to the question of waiver of an arbitration clause governed by the FAA).

a waiver of the right to arbitrate the current dispute. If not, Midland's litigation of that claim was not "inconsistent with an intent[ ] to insist upon" its contractual right to arbitration, and it did not waive its right to arbitrate Cain's claims. *See BarGale*, 275 Md. at 643.

## Arbitration Clause

Midland argues that under the terms of the arbitration agreement, claims that fall within the jurisdiction of a small claims court are not arbitrable. Therefore, it was required to litigate its collection action against Cain in district court, and the fact that it did so cannot constitute a waiver of its right to arbitrate. We disagree.

Because arbitration is a matter of contract, we use contract principles to determine whether an agreement to arbitrate exists. *Ford v. Antwerpen Motorcars Ltd.*, 443 Md. 470, 477 (2015) (citations omitted). When a contract's language is unambiguous, as it is here, we give effect to its plain meaning without considering what the parties intended. *Rourke v. Amchem Prod., Inc.*, 384 Md. 329, 354 (2004) (citation omitted). Therefore, only "the intention of the parties as expressed in the language of the contract controls the analysis." *Antwerpen*, 443 Md. at 477 (citation omitted).

The arbitration clause at issue provides:

> ***Agreement to Arbitrate:***
> Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> ***Claims Covered:***
> **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the

11

application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

By its terms, the arbitration agreement permits either party to elect arbitration of "any claim, dispute, or controversy." But it provides a narrow exception from arbitration for suits filed in small claims court:

> **What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

Midland argues that this exception required it to litigate all claims falling under the jurisdiction of a small claims court. Specifically, it argues that the phrase, "are not subject to arbitration" prohibited it from arbitrating the 2009 collection action. But Midland's cramped reading overlooks the beginning of this provision—"claims filed." When read together—"[c]laims **filed in** small claims court are not subject to arbitration"—it is clear that the collection action was subject to arbitration or litigation until Midland filed the claim in small claims court. (Emphasis added.) At that point, the restriction on arbitration

12

was triggered. Thus, Midland could choose whether to litigate or arbitrate its collection action against Cain—and it chose to litigate. And, in doing so, Midland waived its right to arbitrate "related claims"—a term that is much disputed.

### "Related Claims" Under *Frank*

Cain argues that his claims, though not identical, are "closely related" to Midland's 2009 collection action, and thus Midland waived its right to arbitrate them by litigating an arbitrable issue in that proceeding. Midland counters that it did not waive its right to arbitrate Cain's claims by litigating the collection action because, under *Frank*, "waiver is limited to those issues raised and/or decided in the judicial proceeding," and Midland's collection practices were not at issue in that proceeding. *Frank*, 294 Md. at 454. We do not read *Frank* so narrowly.

*Frank* primarily involved two contract disputes that arose out of the construction of a community center. *Id.* at 445–47. In the first dispute, a subcontractor sued a contractor for additional compensation for the removal of rock from the construction site. *Id.* at 445. The contractor answered and impleaded the owner. *Id.* Although the claim was arbitrable, the owner did not pursue arbitration, and, eventually, the parties settled. *Id.* at 445–46. Two months later, the contractor, in accordance with the construction contract, filed a demand for arbitration against the owner for the outstanding balance on the contract. *Id.* at 446. The owner attempted to force the contractor to litigate the claim, arguing that the contractor had waived the arbitration provision by litigating the first lawsuit. *Id.* We held that the contractor had not waived its right to arbitrate its dispute with the owner because the issue in the second case was "unrelated" to the rock removal at issue in the first case.

13

*Id.* at 454–55. We explained that "waiver does not extend to any unrelated issues arising under the contract" and suggested that it only extends to other disputes when "all of the parts of the dispute [are] deemed to be interrelated."[13] *Id.* at 454, 453. We emphasized that claims are related when "*[t]he claim is in actuality part of one basic issue*." *Id.* at 453 (emphasis in original) (citation omitted).

Although, like *Frank*, this case involves two lawsuits arising under the same contract, the similarities end there. The *Frank* cases involved two completely separate issues—a contractor's failure to pay a subcontractor for rock removal and an owner's failure to pay the contractor the balance due on the construction project. Neither suit was dependent on the other. Cain's current claims, however, depend on Midland's 2009 collection action and money judgment. Cain seeks declaratory and injunctive relief to recover the judgment against him and pre- and post-judgment interest and costs. He also brings unjust enrichment, MCDCA, and Maryland Consumer Protection Act claims against

---

[13] Federal courts that have addressed this question also analyze whether the claims at issue are factually and legally distinct from those litigated previously. In *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244 (4th Cir. 2001), the U.S. Court of Appeals for the Fourth Circuit held that an employer did not waive its right to arbitrate its former employee's discrimination claims when it filed suit to keep the former employee from disclosing confidential information. *Id.* at 250. The court explained, "Because these claims are distinct, both factually and legally, from [the former employee's] discrimination claims, the litigation surrounding these claims cannot support a finding that [the employer] waived its right to arbitrate the **unrelated** claims." *Id.* (emphasis added). Similarly, in *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126 (2d Cir. 1997), the Second Circuit explained that "only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." *Id.* at 133. The Seventh Circuit has explained that a party waives its right to arbitrate future disputes "growing out of the same set of circumstances" when it chooses to bring its adversary to court. *Midwest Window Sys., Inc. v. Amcor Indus., Inc.*, 630 F.2d 535, 536 (7th Cir. 1980).

14

Midland. Put simply, if Midland had not pursued its 2009 collection action, Cain's current claims would not exist. Thus, the claims are part of "one basic issue" of whether Midland was entitled to a money judgment against Cain, and therefore are related. *See Frank*, 294 Md. at 453.

Other states considering the same question have concluded that debt collectors that pursue collection actions against debtors waived the right to arbitrate claims challenging the final judgments rendered in those actions. In a Nevada case, *Principal Investments, Inc. v. Harrison*, 366 P.3d 688 (Nev. 2016), a payday loan company used process servers who filed false affidavits attesting that summonses and complaints had been served when they had not.[14] It then obtained default judgments against borrowers when they failed to appear in court. *Id.* at 690–91. Several borrowers brought a class action suit against the payday loan company requesting declaratory and injunctive relief, including that the judgments be declared void. *Id.* at 691. The Nevada Supreme Court held that the payday loan company waived its right to arbitrate the class's claims. *Id.* at 697–98. It reasoned that because the payday loan company had initiated the collection actions, it would be unfair to the borrowers to require arbitration of the claims seeking to set aside the judgments due to the company's alleged fraud or criminal conduct. *Id.* Distinguishing the case from cases finding no waiver, it emphasized that the borrowers' claims "arise out of, and are integrally related to" the small claims actions. *Id.* at 697.

---

[14] The process servers were also cited for serving process without a license. *Principal Investments v. Harrison*, 366 P.3d 688, 691 (Nev. 2016).

In a similar case, *Nelson v. Liberty Acquisitions Servicing LLC*, 374 P.3d 27 (Utah Ct. App. 2016), Utah's intermediate appellate court found that a debt buyer had waived its right to arbitrate claims challenging its debt collection practices by pursuing collection actions in court.[15] *Id.* at 30. It reasoned that the debtors' state and federal consumer protection act claims "did not just exist at the time of the [c]ollection [a]ctions but were in fact created by the filing of the [c]ollection [a]ctions." *Id.* We find this logic persuasive. Here, Cain would not have claims against Midland if it had not pursued the 2009 collection action in district court. Indeed, Cain's claims would not exist if Midland had not obtained a final judgment against him while it was unlicensed. *See Finch*, 212 Md. App. at 769 (holding that district court judgments obtained by unlicensed debt collectors are void and may be collaterally attacked in another court). Thus, Midland waived its right to arbitrate Cain's claims when it filed and pursued the 2009 collection action.[16]

---

[15] *But see Hudson*, 387 P.3d at 50–52 (holding debt collector did not waive its right to arbitrate consumer protection claims by bringing collection action in court because the "evidence and legal theories included in the two different claims would have little if any overlap").

[16] Cain advances two additional arguments regarding the issue of waiver. First, he argues that Midland waived its right to arbitrate by waiting to invoke the arbitration clause until after this Court denied certiorari in *Finch*. Second, Cain argues that Midland's course of conduct in litigating the *Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013), class action suit for over five years and filing thousands of collection actions in Maryland state court are acts "inconsistent with [the] intent[ ] to insist upon" arbitration, and therefore Midland waived its right to arbitrate. *See BarGale Indus., Inc. v. Robert Realty Co.*, 275 Md. 638, 643 (1975). We decline to reach these arguments because we have concluded that Midland waived its right to arbitrate Cain's current claims by pursuing the 2009 collection action.

16

**Prejudice as an Element of Waiver**

Lastly, Midland argues that to find waiver of its right to arbitrate, we must determine that Cain would be prejudiced if this dispute moved to arbitration.[17] We have never addressed the question of whether prejudice is required to find waiver of the right to arbitrate.[18] Thus, we look to Maryland law establishing the elements of general contractual waiver.

In Maryland, it is well-settled that waiver is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right,

_____

[17] Midland argues that, under the FAA, Cain must demonstrate prejudice for us to find that Midland waived its right to arbitrate. It is true that most federal courts require a showing of prejudice to find a "default" under § 3 of the FAA, *supra*, note 10. *See, e.g.*, *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004) ("In addition to the invocation of the judicial process, there must be prejudice to the party opposing arbitration before we will find that the right to arbitrate has been waived."); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996) (The "key inquiry" in determining waiver is "whether the party opposing the stay has suffered any actual prejudice." (citation omitted)). But as discussed previously, we apply Maryland law to the question of whether a party has waived its right to arbitrate under the FAA. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Perry v. Thomas*, 482 U.S. 483, 492–93 n.9 (1987). Because prejudice (if relevant) is a part of the waiver analysis, we also apply Maryland law to the question of whether prejudice is required to find such a waiver.

[18] This question has reached the Court of Special Appeals, and that court has never treated prejudice as a prerequisite to waiver. *See Freedman v. Comcast Corp.*, 190 Md. App. 179, 206 (2010) (analyzing prejudice as part of overall analysis of whether a party had waived the right to arbitrate); *Abramson v. Wildman*, 184 Md. App. 189, 200–02 (2009) (same); *Commonwealth Equity Servs., Inc. v. Messick*, 152 Md. App. 381, 398 (2003) ("We need not decide . . . whether delay, without a showing of prejudice to the opposing party, may support a finding of waiver . . . because . . . the court found that appellees had been prejudiced by appellants' delay in seeking to compel arbitration."); *RTKL Assocs., Inc. v. Four Villages Ltd. P'ship*, 95 Md. App. 135, 144 (1993) (declining to reach the issue of "whether prejudice must be occasioned before a waiver may be found" because the trial court found that the opposing party was prejudiced by the delay).

and may result from an express agreement or be inferred from circumstances." *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 122–23 (2011) (citation omitted). We have clarified the elements of waiver by distinguishing it from the related doctrine of estoppel. This Court has explained that "waiver does not necessarily imply that one has been misled to his prejudice or into an altered position," whereas "estoppel always involves this element." *Benson v. Borden*, 174 Md. 202, 219 (1938); *see also Hovnanian*, 421 Md. at 122 (describing how a party may waive a contractual right with no mention of prejudice); *Gould v. Transamerican Assocs.*, 224 Md. 285, 299 (1961) (evaluating prejudice to the opposing party only as part of estoppel analysis, not waiver inquiry). In *Williston on Contracts*, Professor Richard A. Lord explains the difference between true contractual waiver and "waiver by estoppel":

> Unlike a waiver by estoppel, implied from conduct, which depends not so much on the intention of the waiving party as on the reliance of the nonwaiving party, a true waiver, implied from a party's conduct, is dependent solely on what the party charged with waiver intends to do, and there is no need to show reliance by the party asserting or claiming the waiver.

13 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 39:28, at 683 (4th ed. 2013) (footnote omitted). Although "the same conduct may constitute both an implied waiver and an estoppel," waiver does not require a showing of prejudice. *Gould*, 224 Md. at 295. To determine whether a party has waived a contractual right, we look to the words and conduct of that party—not what effect the conduct may have had on the opposing party. *Wright v. Wagner*, 182 Md. 483, 491 (1943).

18

Despite this distinction between waiver and estoppel generally, when evaluating whether a party has waived its right to arbitrate in particular, "many courts adopt reasoning or language that is grounded more in estoppel than waiver or a loose combination of the two." 8 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 21:178, at 88 (2014). For example, the Nevada Supreme Court has explained, "[A] waiver may be shown when the party seeking to arbitrate (1) knew of his right to arbitrate, (2) acted inconsistently with that right, and (3) prejudiced the other party by his inconsistent acts." *Nev. Gold & Casinos, Inc. v. Am. Heritage, Inc.*, 110 P.3d 481, 485 (Nev. 2005); *see also LAS, Inc. v. Mini-Tankers, USA, Inc.*, 796 N.E.2d 633, 638 (Ill. App. 2003) ("A waiver of the right to arbitrate may not be found in the absence of prejudice to the party opposing arbitration.").

But, as explained *supra*, in interpreting the FAA, the Supreme Court has instructed state courts to apply the same principles of contract law to arbitration agreements as we do to all other contracts. *Perry*, 482 U.S. at 492–93 n.9; *see also Dean Witter*, 470 U.S. at 219. The Supreme Court of West Virginia has explained that "the question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context." *Parsons*, 785 S.E.2d at 853 (quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987)). Thus, the court reasoned, "[t]here is no requirement that the party asserting waiver show prejudice." *Id.* We agree.

We decline to adopt an approach that distinguishes waiver of the right to arbitrate from other types of contractual waiver. Additionally, we see no reason to depart from our

19

precedent on contractual waivers generally. Therefore, we hold that to establish that Midland waived its right to arbitrate, Cain does not have to demonstrate that he will suffer prejudice if the arbitration clause is enforced.

## CONCLUSION

Because Midland's 2009 collection action is related to Cain's claims, Midland waived its right to arbitrate the current claims when it chose to litigate the collection action. In addition, Cain does not have to demonstrate that he suffered prejudice to establish that Midland waived the arbitration provision. Accordingly, we reverse the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. COSTS TO BE PAID BY RESPONDENT.**

20

Circuit Court for Baltimore City
Case No. 24-C-13-004869
Argued: January 9, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 45

September Term, 2016

_____

CLIFFORD CAIN, JR.

v.

MIDLAND FUNDING, LLC

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Getty,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Dissenting Opinion by Getty, J.,
    which Harrell, J., joins.

_____

Filed: March 24, 2017

I respectfully dissent from the Majority's conclusion that Midland waived its right to arbitrate the current class action lawsuit by filing a collection action against Mr. Cain in 2009. Even if Midland had the option, under the contract, to arbitrate the 2009 collection action, I disagree that its decision to litigate rather than arbitrate that claim suffices to waive its contractual right to arbitrate virtually all other disputes between the parties arising under the contract. The Majority's overly broad definition of "related claims" under *Frank* contradicts "Maryland's legislative policy favoring enforcement of executory agreements to arbitrate." *See Charles J. Frank, Inc. v. Associated Jewish Charities of Balt., Inc.*, 294 Md. 443, 454 (1982). Therefore, I would hold that the 2009 collection action and the current class action lawsuit are not "related" claims under *Frank*, and thus Midland did not waive its right to arbitrate the current action when it filed the collection action.

As this Court recognized in *Frank*, "The Maryland Uniform Arbitration Act . . . embodies a legislative policy favoring enforcement of executory agreements to arbitrate." *Id.* at 448. As such, "[t]he intention to waive [a contractual right to arbitrate] must be clearly established and will not be inferred from equivocal acts or language." *Id.* at 449. With this "policy favoring enforcement of executory agreements to arbitrate" in mind, the Court in *Frank* considered whether a party's participation in a judicial proceeding constitutes a waiver that "extends to the right to arbitrate other unrelated issues arising under the contract." *Id.* at 450.

Examining cases from New York and Louisiana, this Court determined that those jurisdictions hold "that although a party to a judicial proceeding involving issues arising under a contract waives the right to arbitrate those issues, the waiver does not extend to

unrelated issues arbitrable under the contract." *Id.* at 452–53. The Court also recognized "that courts in some jurisdictions have decided that when some degree of participation in a judicial proceeding constitutes a waiver of the right to arbitrate a part of a dispute arising under a contract, the waiver extends to the entire dispute." *Id.* at 453. "However, these courts have reached this conclusion only under circumstances in which **all parts of the dispute were deemed to be interrelated**." *Id.* (emphasis added).

The Court in *Frank* described *Maddy v. Castle* as being illustrative of decisions falling into the latter category. *Id.* (discussing *Maddy v. Castle*, 58 Cal. App. 3d 716 (1976)). In *Maddy*, a contractor sued an owner for the unpaid balance of $350 for completed work under a contract. *Id.* The owner countersued for $4500 in damages for improper performance, and the contractor demanded arbitration of the owner's counterclaim. *Id.* The Court of Appeals of California, Second District, concluded that the contractor's action in filing suit constituted a waiver of its right to arbitrate the owner's $4500 counterclaim, and specifically rejected the contractor's argument that the waiver was limited to its $350 claim. *Id.* The California court explained,

> In a dispute such as this it is impossible to separate the claim for money by [the contractor] from the counterclaims which are the defense to this money claim. *The claim is in actuality part of one basic issue*—whether the work was properly completed—and cannot be separated from other claims of the issue itself.

*Id.* (quoting *Maddy*, 58 Cal. App. 3d at 722). This Court in *Frank* then summarized this holding as follows: "waiver of a part of the dispute constituted waiver of the entire dispute because the dispute involved **a single issue**, not unrelated issues." *Id.* at 453–54 (emphasis added).

2

In concluding its examination of the pertinent cases from other jurisdictions, the Court in *Frank* remarked,

> No case has been cited, and we have found none, in which a court has held that a waiver of the right to arbitrate issues arising under a contract by some degree of participation in a judicial proceeding constitutes a waiver for all purposes under the contract and, therefore, extends not only to issues raised and/or decided in the judicial proceeding, but also to unrelated issues.

*Id.* at 454. This conclusion, expressly rejected by this Court in *Frank*, is effectively the holding of the Majority today.

The Majority concludes that the 2009 collection action and the current class action lawsuit are related because the latter is "dependent on" the former. Majority Slip Op. at 14. This is because "if Midland had not pursued its 2009 collection action, [Mr.] Cain's current claims would not exist." *Id.* at 15. Therefore, in the Majority's view, "the claims are part of 'one basic issue' of whether Midland was entitled to a money judgment against [Mr.] Cain." *Id.* (quoting *Frank*, 294 Md. at 453). I disagree.

The "basic issue" in the collection action was whether Mr. Cain owed a debt to Citibank under the contract; the "basic issue" in the current class action is whether judgments obtained by Midland (against Mr. Cain and many others) while it was operating as an unlicensed collection agency are void, based solely on the decision in *Finch v. LVNV, LLC*, 212 Md. App. 748 (2013). Certainly, the collection action and the current class action lawsuit are "related" in the sense that they involve the same contract and some of the same parties. But this broad definition of relatedness, in determining which claims are encompassed by a party's waiver of the right to arbitrate, is precisely what this Court rejected in *Frank*:

3

In our view, even when participation in a judicial proceeding involving arbitrable issues arising under a contract constitutes a waiver of the right to arbitrate those issues raised and/or decided in the judicial proceeding, **such conduct is not necessarily inconsistent with an intention to enforce the right to arbitrate unrelated issues arising under the same contract**. Such conduct, in and of itself, is too equivocal to support an inference of an intentional relinquishment of the right to arbitrate issues other than those raised and/or decided in the judicial proceeding. We are persuaded that when a party waives the right to arbitrate an issue by participation in a judicial proceeding, the waiver is limited to those issues raised and/or decided in the judicial proceeding and, absent additional evidence of intent, **the waiver does not extend to any unrelated issues arising under the contract**. Our conclusion that waiver of the right to arbitrate cannot be inferred in the absence of a clear expression of intent is consonant with Maryland's legislative policy favoring enforcement of executory agreements to arbitrate.

*Frank*, 294 Md. at 454 (emphases added).

Although the Majority purports to be following *Frank*, its definition of "related claims" is so broad that it essentially forecloses the possibility that distinct disputes between the same parties (or similar parties, when a putative class is involved) arising under the same contract will ever constitute "unrelated issues." Unlike the holding in *Frank*, today's Majority decision is incongruous "with Maryland's legislative policy favoring enforcement of executory agreements to arbitrate." *See id.*

Furthermore, it is unreasonable to hold that Midland's action of filing the 2009 collection action "support[s] an inference of an intentional relinquishment to arbitrate issues other than those raised and/or decided in" that proceeding, *see id.*, particularly where the contract contains an express restriction on arbitration for claims filed in small claims court.

"A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. '[A]cts relied

4

upon as constituting a waiver of the provisions' of a contract must be inconsistent with an intention to insist upon enforcing such provisions."

*Id.* at 449 (quoting *BarGale Indus., Inc. v. Robert Realty Co., Inc*, 275 Md. 638, 643 (1975)). Under the Majority's interpretation of the contract, Midland had the option to either arbitrate or litigate the collection action, and it chose to litigate. *See* Majority Slip Op. at 12–13. This is because the collection action falls under an exception to the arbitration clause, whereby "claims filed in small claims court are not subject to arbitration." *Id.* But Midland's choice to litigate the collection action is not "inconsistent with an intention to insist upon enforcing" the right to arbitrate claims not falling under the small claims exception to arbitration contained in the contract. *See Frank*, 294 Md. at 449 (quoting *BarGale*, 275 Md. at 643). Because the contract contains an express exception to arbitration for claims falling under the jurisdiction of a small claims court, it is unreasonable to hold that, by exercising this option, Midland also waived its contractual right to arbitrate other, non-excepted claims arising under the contract in the future.

Although the Majority does not reach Mr. Cain's other arguments supporting his claim of waiver, *see* Majority Slip Op. at 16 n.16, I would hold that they are also unpersuasive. As the Court of Special Appeals noted in its unreported opinion below, the *Vassalle* class action "arose out of a challenge to Midland employees' practice of robo-signing 'between 200 and 400 computer-generated affidavits per day for use in debt-collection actions, without personal knowledge.'" *Cain v. Midland Funding, LLC*, No. 530, Sept. Term 2014, 2016 WL 1597179, at *13 (Md. Ct. Spec. App. Apr. 21, 2016) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 752 (6th Cir. 2013)). Thus, the

5

issues raised in the *Vassalle* action are unrelated to the issues raised in Mr. Cain's class action, and Midland's participation in the *Vassalle* proceedings does not constitute a waiver of the right to arbitrate for purposes of the current class action.

In addition, Midland did not waive its right to arbitration by waiting to compel arbitration in this case until after this Court denied certiorari in *Finch*. As the Court of Special Appeals noted,

> Midland did not file an answer to the complaint and seek the benefit of discovery . . . . Rather, Midland's first action was to seek a stay of the action pending an appellate decision on a matter of law central to Mr. Cain's claims, **with Mr. Cain's consent**. Once the stay was lifted, Midland promptly filed its petition to compel arbitration. Midland's consent motion for stay of the proceedings was a "legitimate reason for participating in litigation," and such limited participation does not equate to waiver. *See Abramson* [*v. Wildman*, 184 Md. App. 189, 201 (2009)]. Moreover, we do not perceive the passage of time during the consented-to stay pending a decision by the Court of Appeals as a delay intentionally caused by Midland.

*Id.* (emphasis added).

Therefore, I would hold that Midland has not acted "inconsistent with an intention to insist upon enforcing" the arbitration provisions in the contract with Mr. Cain, *see Frank*, 294 Md. at 449 (quoting *BarGale*, 275 Md. at 643), and thus has not waived its right to arbitrate the current the class action. Having found no waiver, I would decline to reach the issue of whether Mr. Cain must show that he will suffer prejudice if the arbitration clause is enforced, instead reserving that decision for a case in which the issue is properly before us. Accordingly, I would affirm the judgment of the Court of Special Appeals.

Judge Harrell has authorized me to state that he joins in this opinion.