*473 GREENE, J.
In the instant case we are asked to consider the extent to which multiple documents executed on the same day during the course of the purchase and financing of an automobile may be read together as constituting the entire agreement between the parties. In particular, we address whether the Code of Maryland Regulations (“COMAR”) 11.12.01.15(A),[1] which Petitioners have referred to as the “Single Document Rule,”[2] prevents an automobile dealer from relying on an arbitration provision found in a Buyer’s Order,[3] but not explicitly within the four corners of the Retail Installment Sales Contract (“RISC”). We conclude that COMAR 11.12.01.15(A) does not, as Petitioners suggest, displace our common law contract principles permitting multiple documents from being construed together as evincing the entire agreement of the parties. Rourke v. Amchem Prods., Inc., 384 Md. 329, 354, 863 A.2d 926, 941 (2004); Rocks v. Brosius, 241 Md. 612, 637, 217 A.2d 531, 545 (1966).
I. FACTUAL AND PROCEDURAL BACKGROUND
This case arises from Petitioners’, Willie Mae Ford and Rashad Earle Beale, purchase and finance of an automobile from Respondent, Antwerpen Motorcars Ltd. (“Antwerpen”), on April 24, 2010. Petitioners aver that Antwerpen faded to properly disclose the vehicle’s history, including its involvement in a collision and use as a short-term rental. The *474 gravamen of Petitioners’ dispute before this Court concerns not the vehicle’s history, but rather the existence, or lack thereof, of an agreement to arbitrate disputes under the terms of the vehicle sales contract. In determining whether Petitioners’ claims against Antwerpen are subject to a mandatory arbitration provision, we consider two documents executed by the parties during the transaction. On the same day, Petitioners executed both a Buyer’s Order — which sets forth the purchase price — and a Retail Installment Sales Contract (“RISC”) — which contains the financing terms of the purchase.
In relevant part, the Buyer’s Order provides:

AGREEMENT TO ARBITRATE DISPUTES

Buyer(s) (also referred to as “You”) and Dealer agree that if any Dispute arises, the Dispute will be resolved by binding arbitration[.]
A Dispute is any question as to whether something must be mediated and the terms and procedures of the mediation, as well as any allegation concerning a violation of a sales state or federal statute that may be subject of mediation, any monetary claim whether contract, tort, or other, arising from the negotiation of and terms of the Buyer’s Order, any service contract or insurance product, or any retail installment sale contract or lease (but this mediation agreement does not apply to and shall not be binding on any assignee thereof).
The parties understand that they are waiving their rights to jury a trial and class consideration of all claims and disputes between them not specifically exempted from arbitration in this Agreement.
The front and back of this buyer’s order, along with other documents signed by You in connection with this order, comprise the entire agreement between the parties affecting this purchase.
*475 Petitioners’ signatures appear directly below the language contained in the Agreement to Arbitrate.
The RISC, which sets forth the terms of the financing agreement between Petitioners and Antwerpen, does not include an agreement to arbitrate. Specifically, the RISC provides that ‘You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract.” Following the various financing terms contained in the agreement, the RISC provides, in relevant part, that “[t]his contract along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement between you and us affecting this purchase.” (Emphasis added). Petitioners’ signatures are located two sentences after this provision. The RISC further provides that it is governed by the Creditor Grantor Closed End Credit Provisions (“CLEC”), Md.Code (1975, 2013 Repl.Vol., 2014 Supp.), § 12-1001 et seq. of the Commercial Law Article (“Com. Law”).
Petitioners filed their Complaint in the Circuit Court for Baltimore City on April 29, 2013, after discovering the vehicle’s alleged incident history. In their Complaint, Petitioners asserted the following causes of action against Antwerpen: Breach of Implied Warranty of Merchantability (Count I); violation of the Maryland Consumer Protection Act (Count II); Deceit by Non-Disclosure or Concealment of Prior Rental and Accident (Counts III — IV); Negligent Misrepresentation (Count V); and Contract (Count VI). Antwerpen moved to compel arbitration on the basis of the Agreement to Arbitrate contained in the Buyer’s Order. Petitioners opposed Antwerpen’s motion on the grounds that the language of the Buyer’s Order was superseded by the RISC, which contained no arbitration agreement. Following a hearing on Antwerpen’s motion on October 21, 2013, the Circuit Court entered an order granting Antwerpen’s Motion to Compel Arbitration.
*476 On November 18, 2013, Petitioners appealed to the Court of Special Appeals seeking a reversal of the judgment entered in the Circuit Court. Prior to any proceedings in the Court of
Special Appeals, we granted Petitioners’ certiorari petition, Ford v. Antwerpen Motorcars, 440 Md. 114, 99 A.3d 778 (2014), to consider the following question:
(1) Under Maryland contract law, is an arbitration provision not contained in a vehicle sales contract, but found in a Buyer’s Order executed on the same day, enforceable where the applicable Maryland regulations require vehicle sales contracts to “contain[] all agreements of the parties”?
As explained in greater detail below, we shall answer that question in the affirmative and hold that, for the purposes of the instant case, the Buyer’s Order may be construed together with the RISC as evincing the entire agreement between the parties. Accordingly, we affirm the judgment of the Circuit Court.
II. STANDARD OF REVIEW
An order compelling arbitration is a final and appeal-able judgment of the trial court. Holloman v. Circuit City Stores, Inc., 391 Md. 580, 588, 894 A.2d 547, 551 ,(2006). “The trial court’s conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law,” which we review for legal correctness. Walther v. Sovereign Bank, 386 Md. 412, 422, 872 A.2d 735, 741 (2005); Holloman, 391 Md. at 588, 894 A.2d at 551. When reviewing a trial court’s decision compelling arbitration, our role “ ‘extends only to a determination of the existence of an arbitration agreement.’ ” Walther, 386 Md. at 422, 872 A.2d at 741 (quoting Allstate Ins. Co. v. Stinebaugh, 374 Md. 631, 645, 824 A.2d 87, 95 (2003)).
III. DISCUSSION
The parties’ present dispute concerns the existence of an agreement to arbitrate contained in the Buyer’s Order and, in particular, whether multiple documents signed during *477 the purchase and finance of the vehicle may be read together as constituting the entire agreement between the parties to a vehicle sales contract. “The issue of whether an agreement to arbitrate exists is governed by contract principles.” Holloman, 391 Md. at 590, 894 A.2d at 552; Walther, 386 Md. at 425, 872 A.2d at 743 (citation omitted) (“Whether a valid arbitration agreement exists ... ‘depends on contract principles since arbitration is a matter of contract.’ ”); Curtis G. Testerman Co. v. Buck, 340 Md. 569, 579, 667 A.2d 649, 654 (1995) (citation omitted) (“Arbitration is ‘consensual; a creature of contract.... In the absence of an express arbitration agreement, no party may be compelled to submit to arbitration in contravention of its right to legal process.’ ”).
“The fundamental rule in the construction and interpretation of contracts is that the intention of the parties as expressed in the language of the contract controls the analysis.” Buck, 340 Md. at 580, 667 A.2d at 654. “In construing contracts, Maryland follows the objective interpretation principle. If the language of the contract is unambiguous, we give effect to its plain meaning and do not delve into what the parties may have subjectively intended.” Rourke v. Amchem Prods., Inc., 384 Md. 329, 354, 863 A.2d 926, 941 (2004). “ ‘[A] party who signs a contract is presumed to have read and understood its terms and as such will be bound by its execution.’ ... ‘[W]e are loath to rescind a conspicuous agreement that was signed by a party whom now, for whatever reason, does not desire to fulfill that agreement.’ ” Koons Ford of Balt., Inc. v. Lobach, 398 Md. 38, 46, 919 A.2d 722, 727 (2007) (citations omitted).
Petitioners contend that the Circuit Court erred in granting Antwerpen’s motion by construing the arbitration provision contained in the Buyer’s Order together with the RISC. In Petitioners’ view, the RISC constitutes the vehicle sales contract, and it does not contain an arbitration clause. Therefore, Petitioners contend that the RISC and the Buyer’s Order, as a matter of law, are separate agreements that may not be read together. In support of their position, Petitioners rely sub *478 stantially upon the language of COMAR 11.12.01.15(A), which Petitioners refer to as the “Single Document Rule.” This regulation provides that “[e]very vehicle sales contract or agreement shall be evinced by an instrument in writing containing all of the agreements of the parties.” Petitioners, directing this Court to the use of the singular term “an instrument,” aver that “[t]his means that, even if a contract in other situations might be comprised of several documents, in a car sale in Maryland COMAR requires all the terms of the contract must be contained in one document, or ‘instrument’ [sic].”
Where the vehicle is financed by the dealer, Petitioners assert that the RISC alone serves as the “vehicle sales contract,” because the RISC contains both the principal amount and interest charged. See Md.Code (1977, 2012 Repl.Vol., 2014 Supp.), § 15-311 of the Transportation Article (“A contract for the sale of a vehicle by a dealer shall contain ... [t]he principal amount charged for the vehicle; [and] any interest charged on the principal amount[.]”). Petitioners further maintain that the RISC, itself, purports to be the entire agreement between the parties because it provides that “[b]y signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract.” Accordingly, the RISC, in Petitioners’ view, must include all of the agreements between the parties within the four-corners of that document. Hence, Petitioners conclude that the failure of Antwerpen to include the arbitration provision within the RISC means that no such agreement exists and arbitration may not be compelled. This failure, they contend, renders the RISC and the Buyer’s Order inconsistent and, as a result, the documents cannot be read together as one agreement.
Antwerpen argues that, under well-established contract law, the Buyer’s Order and RISC may be construed together as evincing the entire agreement of the parties. See Rocks v. Brosius, 241 Md. 612, 637, 217 A.2d 531, 545 (1966). Antwerpen points out that, contrary to Petitioners’ contention that the RISC contains an integration provision, the RISC incorpo *479 rates by reference the Buyer’s Order and its arbitration provision by providing that “[t]his contract along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement.” (Emphasis added). Further, Antwerpen contends that Petitioners have mischaracterized COMAR 11.12.01.15(A) as a “Single Document Rule.” Antwerpen notes that Petitioners have failed to provide any authority using or creating the label “Single Document Rule” in reference to COMAR 11.12.01.15(A). This regulation, Antwerpen asserts, “simply does not state that all of the agreements ... must be in ‘a single document.’ ” Contrary to Petitioners’ interpretation, the use of the phrase “an instrument” does not preclude incorporating other documents by reference. Accordingly, Antwerpen asks this Court to affirm the decision of the Circuit Court compelling arbitration.
We disagree with Petitioners that COMAR 11.12.01.15(A) supplants our longstanding common law contract principles permitting the construction or reading of multiple documents together as part of a single transaction. As explained by this Court in Rocks, 241 Md. at 637, 217 A.2d at 545:
A contract need not be evidenced by a single instrument. Where several instruments are made a part of a single transaction they will all be read and construed together as evidencing the intention of the parties in regard to the single transaction. This is true even though the instruments were executed at different times and do not in terms refer to each other.
See also Rourke, 384 Md. at 354, 863 A.2d at 941 (“Where the contract comprises two or more documents, the documents are to be construed together, harmoniously, so that, to the extent possible, all of the provisions can be given effect.”).
Since 1978, COMAR 11.12.01.15(A) has provided that “[e]very vehicle sales contract or agreement shall be evinced by an instrument in writing containing all of the agreements of the parties.” See 5:12 Md. R. 981 (June 16, 1978); 5:17 Md. R. *480 1331 (August 25, 1978). Contrary to Petitioners’ labeling of this regulation as the “Single Document Rule,” the term “single” is absent from the language. Nor is there any indication in our jurisprudence that, as a result of the use of the singular term “an instrument,” a vehicle sales contract may not, as a matter of law, incorporate multiple documents by reference. To the contrary, the mere use of a singular term such as “an instrument” or “a contract,” does not prevent the application of the principles in Rocks and Rourke.
Petitioners have provided this Court with several opinions, which in Petitioners’ view have “consistently and repeatedly reenforced the requirement that all agreements ... must be contained in one instrument, and have recognized that only the financing agreement or RISC contains all of the agreements of the parties.” Upon review, the authorities provided, none of which are binding upon this Court,[4] offer little more than cursory, unpersuasive assertions lacking support in our jurisprudence. Indeed, these authorities either provide no textual support or cite to one of the other unpersuasive *481 opinions Petitioners rely upon to present their case to this Court.
To the extent the opinions Petitioners have provided this Court suggest that, in the context of a vehicle sale financed by the dealer, a Buyer’s Order may not be construed together with the RISC, such opinions appear already to have been called into question by the Fourth Circuit’s recent opinion in Rota-McLarty v. Santander Consumer USA Inc., 700 F.3d 690 (4th Cir.2012). In Rota-McLarty, similar to the instant case, an individual executed a Buyer’s Order — which contained an agreement to arbitrate — and a RISC — which contained no arbitration agreement — with the dealership during the purchase and financing of an automobile. Id. at 694-95.
In determining whether the arbitration agreement in the Buyer’s Order was enforceable, the court noted that:
Rota-McLarty does advance a novel theory in support of integration on appeal, premised on Md.Code Regs. § 11.12.01.15, which provides that “every vehicle sales contract or agreement shall be evidenced by an instrument in writing containing all of the agreements of the parties.” See Appellee’s Br. at 19. She seems to argue that the regulation requires one document by itself to constitute the parties’ agreement, and thus we must read the Buyer’s Order alone. Even if this argument is not waived, RotaMcLarty fails to provide any authority for her interpretation of the cited regulation, nor for the proposition that this regulation supplants an entire established body of Maryland law governing contract interpretation.
Id. at 700 n. 8 (emphasis added). Despite the presence of an integration clause in the RISC, the court concluded that “Rota-McLarty has failed to establish that the RISC’s integration clause prevents reading both [the Buyer’s Order and the RISC] together as a single agreement.” Id. at 700.[5]
*482 Petitioners aver that reliance upon the footnote in Rotar-McLarty is inappropriate because, in their view, the issue of the “Single Document Rule” had not been properly raised before that court. We need not resolve the present dispute on the basis of Rotw-McLarty, however. As explained above, Petitioners have failed to provide this Court with any persuasive or binding authority to support their proposition that only a single document by itself may constitute the parties’ agreement.
Turning to the language of the documents before this Court, the Buyer’s Order and the RISC, reviewed and signed by Petitioners on the same day, indicate an intention that the documents be construed together as part of the same transaction. Notably, the RISC incorporates the Buyer’s Order by reference and provides that “[t]his contract along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement.” (Emphasis added). Petitioners’ signatures were required almost immediately following this statement.
Similarly, the Buyer’s Order states that “[t]he front and back of this buyer’s order, along with other documents signed by You in connection with this order, comprise the entire agreement between the parties!.]” (Emphasis added). Once again, Petitioners’ signatures follow this provision. We also note that the Agreement to Arbitrate contained in the Buyer’s Order refers directly to the RISC in its definition of “disputes.” Indeed, the arbitration provisions states, in part, that “[a] Dispute is ... any monetary claim whether contract, tort, or other, arising from the negotiation of and terms of the Buyer’s Order, any service contract or insurance product, or *483 any retail installment sale contract.” (Emphasis added). In other words, the arbitration agreement signed and agreed to by Petitioners on the same day as the RISC explicitly states that it applies to disputes arising out of the RISC.
We reject Petitioners’ contention that the language, “[b]y signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract” means that the RISC purported to be the sole document considered for the purposes of the agreement between the parties and necessarily superseded the Buyer’s Order. Absent from this language is any indication that any prior agreements, such as the Buyer’s Order executed only moments prior to the RISC, were no longer of any force or effect as Petitioners suggest. As noted above, one of the agreements contained in the RISC requiring Petitioners’ signatures was that “[t]his contract along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement.”
IY. Conclusion
Accordingly, under our long standing common law contract principles as expressed in Rocks and Rourke, multiple documents may be construed together as evincing the entire agreement of the parties to a vehicle sales contract. The RISC and the Buyer’s Order in the present case indicate an intention that they are to be read together as constituting one transaction.
JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. PETITIONERS TO PAY THE COSTS IN THIS COURT.
BATTAGLIA and McDONALD, JJ., concur in the judgment.

. Under COMAR 11.12.01.15(A) "[ejveiy vehicle sales contract or agreement shall be evinced by an instrument in writing containing all of the agreements of the parties.”

. Although Petitioners refer to COMAR 11.12.01.15(A) as the "Single Document Rule,” we have not been provided with, nor are we aware of, any Maryland judicial opinion on point or other persuasive authority using this label.

. The Buyer's Order form sets forth, among other things, the parties to the vehicle sale, the identity of the vehicle purchased, its purchase price, any down payment or trade-in value credited towards the vehicle's price, and the balance owed to the automobile dealership upon delivery.

. Specifically, Petitioners have provided us with state and federal trial court opinions. See Ricks v. Wilson Powell Lincoln-Mercury, Inc., Case No. l:10-cv-02342-WDQ (Cir. Ct. Prince George's Cnty., Mar. 28, 2011); Baker v. Antwerpen Motorcars Ltd., 807 F.Supp.2d 386 (D.Md. 2011); Lambert v. Nat'l Motors, Inc., Civ. No. WMN-10-3522, 2011 WL 1704726 (D.Md. May 4, 2011); Tokarski v. Castle Auto Outlet, LLC, Civ. No. RDB-09-509, 2009 WL 8711121 (D.Md. Sept. 25, 2009); Memo to Counsel, Houston v. Crown Motors, Civ. No. JFM-02-3859 (D.Md. July 8, 2003).
Petitioners also cite to two decisions from the intermediate appellate court, see Sabmd, LLC v. Ross, No. 2277 (Ct.Spec.App.2006), Smith v. Rosenthal Toyota, Inc., 83 Md.App. 55, 573 A.2d 418 (1990). With respect to Smith, Petitioners rely on a single footnote which (1) addresses an inapplicable act and (2) does not consider the possibility of incorporating by reference an arbitration provision.
Lastly, Petitioners have provided this Court with a letter of advisement from an assistant attorney general provided to the Motor Vehicle Administration which unequivocally provides that it is “NOT AN OPINION OF THE ATTORNEY GENERAL” (emphasis in original) and opinions from other jurisdictions that interpret their own state statutes. See, e.g., Raceway Ford Cases Larkin v. New Century Auto Sales Inc., No. 12-13917, 2014 WL 29119 (E.D.Mich. Jan. 3, 2014); Kroupa v. Sunrise Ford, 77 Cal.App.4th 835, 92 Cal.Rptr.2d 42 (1999).

. Rota-McLarty is not the only opinion which casts doubt upon Petitioners’ assertion that “Maryland courts ... have consistently and repeatedly enforced the requirement that all agreements of the parties, including arbitration agreements, must be contained in one instrument *482 in vehicle sales transactions, and ... only the financing agreement or RISC contains all of the agreements of the parties.” For instance, following the Fourth Circuit’s decision, an argument nearly identical to that of Petitioners' was rejected by a Maryland state trial court. See Whitehead v. Driveline Auto., LLC, No. 12-36674 (Cir. Ct. Prince George’s Cnty., April 18, 2013). Interestingly, this opinion was issued by the same judge that previously decided Rides, which Petitioners cite to support their position. See supra.