*Jabari Morese Lyles v. Santander Consumer USA Inc.*, No. 2, September Term, 2025.
Opinion by Gould, J.

**PETITION TO COMPEL ARBITRATION – ROLE OF THE COURT**

When faced with a petition to compel arbitration under section 3-207 of the Courts and
Judicial Proceedings Article of the Annotated Code of Maryland, the circuit court's role is
limited to determining, without a jury, whether an arbitration agreement for the specific
dispute exists.

**CONTRACT INTERPRETATION – MULTIPLE INSTRUMENTS –
ASSIGNMENT OF CONTRACT**

When parties document their binding agreement across multiple instruments, courts will
reconcile and enforce the provisions of each instrument as much as possible. The Supreme
Court of Maryland held that, although two instruments can, in certain instances, be read
together as a single contract, an assignment of one instrument does not automatically assign
the other. The outcome depends on the specific language used in the assignment clause.

Circuit Court for Baltimore City
Case No.: 24-C-21-0000161
Argued: September 8, 2025

IN THE SUPREME COURT

OF MARYLAND

No. 2

September Term, 2025

_____

JABARI MORESE LYLES

v.

SANTANDER CONSUMER USA INC.

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Gould, J.

_____

Filed: November 25, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

In this dispute between the purchaser of a used car and the lender that financed that purchase, we must determine whether the circuit court erred in granting the lender's motion to compel arbitration. The purchaser and the car dealership signed two contracts: one that established the purchase price and the other that established the financing terms. The purchase contract included a provision requiring the parties to arbitrate certain types of disputes. The financing contract contained no such requirement, but did contain language providing that: (1) it was immediately assigned to the lender; and (2) upon its assignment, the lender's contract with the buyer consisted of only the financing contract and any addenda to the financing contract.

Relying on caselaw providing that multiple contracts governing a single transaction must be construed as one, the lender argued that, as the assignee of the financing contract, it was also the assignee of the purchase contract and, hence, the arbitration agreement contained therein. The purchaser, on the other hand, disputed that the purchase contract included a binding arbitration agreement but argued that, even if it did, the lender was assigned only the financing contract and therefore was not an assignee of the arbitration agreement. The circuit court agreed with the lender on both issues and granted its motion to compel arbitration. The Appellate Court of Maryland affirmed the circuit court's judgment in a reported opinion. *Lyles v. Santander Consumer USA Inc.*, 263 Md. App. 583 (2024).

This case turns on contract language that distinguishes between the purchaser's entire agreement with the dealer and the contract rights that passed to the lender. For the following reasons, we hold that, even if there was a binding agreement to arbitrate between

the purchaser and the car dealer, the arbitration agreement was not within the scope of the assignment to the lender. Accordingly, we reverse the judgment of the Appellate Court.

I

A

On October 20, 2015, Petitioner Jabari Morese Lyles bought a Ford Escape truck from Deer Automotive Group, LLC. The transaction was memorialized in two signed contracts.

1

The first was a purchase order for the truck ("Order"), a one-page document with terms and provisions on both sides. The Order identifies the truck by its vehicle identification number and states the purchase price, warranty price, trade-in allowance, and other charges, all of which yielded an "unpaid cash balance due on delivery" of $20,657.

The signature lines for "Purchaser" and "Dealer" are on the front page of the Order. Immediately above the signatures appear these two provisions:

> Purchaser agrees that this Order includes all of the terms and conditions on both the face and reverse side hereof, and that this Order cancels and supersedes any prior agreement and as of the date hereof comprises the complete and exclusive statement of the terms of the agreement relating to the subject matters covered.

> **NOTICE: SEE REVERSE SIDE AND SEPARATE ARBITRATION AGREEMENT FOR IMPORTANT INFORMATION ON YOUR RIGHTS AS TO RESOLVING DISPUTES, CONTROVERSIES OR CLAIMS ARISING FROM THIS ORDER.**

In addition, immediately above Mr. Lyles's signature appears this condition:

> SUBJECT TO FINANCE APPROVAL, IF APPLICABLE.

2

The reverse side of the Order lists "ADDITIONAL TERMS AND CONDITIONS," one of which was Paragraph 7:

> **The parties irrevocably agree that any controversy, claim or dispute arising out of or relating to the purchase or the financing of this vehicle including but not limited to this Purchase Agreement or the breach thereof shall be settled by binding arbitration, pursuant to the separate Agreement to Arbitrate Disputes. However, binding arbitration will not apply to the failure of the Purchaser to provide consideration including failure to pay a note, a dishonored check, failure to provide a trade title, or failure to pay a deficiency resulting from an additional payoff on a trade. In . . . addition, binding arbitration will not apply to Dealer's right to retake possession of the vehicle. SEE SEPARATE ARBITRATION AGREEMENT ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN FOR SPECIFIC DETAILS.**

The reverse side of the Order also includes Paragraph 18:

> The above and the reverse side along with other documents signed by Purchaser in connection with this Order comprise the entire agreement affecting this purchase, and no other agreement or understanding of any nature concerning same has been made or entered into or will be recognized.

On both sides of the document, the Order refers to itself as "this Order," "**THIS ORDER**," "this Agreement," "this agreement," "this order," or "**this Purchase Agreement**."

2

The second contract was a two-page Retail Installment Sale Contract ("RISC"). At the top of the first page, Mr. Lyles is identified as "Buyer" and throughout is referred to as "you." Deer Auto is identified as the "Seller-Creditor" and is defined as "we," "us," and "Seller."

3

The first page contains the business terms of the $20,657 loan, including monthly payments of $503.52 for six years, a total finance charge of $15,596.44, and a total payment of $36,253.44. On the first page, immediately above the signature line, the RISC contains this integration clause:

> This contract, along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement between you and us affecting this purchase. No oral agreements or understandings are binding. Upon assignment of this contract: (i) only this contract and the addenda to this contract comprise the entire agreement between you and the assignee relating to this contract; (ii) any change to this contract must be in writing and the assignee must sign it; and (iii) no oral changes are binding.

> * * *

> NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

> Immediately below the signature lines appears the following assignment clause:

> Seller assigns its interest in this contract to SANTANDER CONSUMER USA (Assignee) under the terms of Seller's agreement(s) with Assignee.

The RISC contains no arbitration provisions.

The second page of the RISC includes other terms and conditions. On both pages, the RISC consistently refers to itself as "this contract." In one place, it refers to itself as "THIS CONSUMER CREDIT CONTRACT" and in another place, it distinguishes itself from "the contract of sale," an evident reference to the Order:

> 5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

4

B

On January 11, 2021, Mr. Lyles filed a putative class action complaint in the Circuit Court for Baltimore City, alleging that Santander violated statutory and contractual obligations as outlined in Maryland's Credit Grantor Closed End Credit Provisions, MD. CODE ANN., COM. LAW § 12-1001 *et seq.* (2023). Specifically, Mr. Lyles contended that Santander breached its RISC with Mr. Lyles and the other members of the putative class by improperly charging and receiving convenience fees for the payments made on its loans.

1

Over two years later,[1] Santander moved to compel arbitration. At that time, Deer Auto was no longer in business. Santander supported its motion with an affidavit from Deer Auto's former attorney, and Mr. Lyles supported his opposition with a sworn declaration from the same attorney. The attorney acknowledged that he had no personal knowledge of Mr. Lyles's purchase of the truck. The attorney did say, however, that he

> drafted and/or reviewed the arbitration agreement to be signed by customers as part of all vehicle transactions (the "Arbitration Agreement"), along with a Buyer's Order and a Retail Installment Sales Contract ("RISC"). It was my understanding that all [of Deer Auto's] vehicle purchasers, new or used, were obligated to sign the Arbitration Agreement as part of a vehicle transaction.

The attorney further explained that Deer Auto's records were unavailable, but he authenticated a copy of an arbitration agreement with another customer as evidence of the

---

[1] In March 2021, Santander removed the case to the United States District Court for the District of Maryland, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), as set forth in 28 U.S.C. § 1332(d)(2). Santander also moved to compel arbitration. On April 17, 2023, the United States District Court remanded this matter to the circuit court for failing to meet the jurisdictional threshold for a CAFA claim and denied Santander's motion as moot.

agreement that Deer Auto had used at the time it contracted with Mr. Lyles. That arbitration agreement provided:

> Unless specifically exempted from arbitration pursuant to paragraph 7 of the Purchase Agreement, Purchaser and Dealer agree that if any controversy, claim or dispute arise out of or relates to the purchase and/or financing of the vehicle, including any negotiations or applications for credit or other dealings or interactions with the Dealership, the controversy, claim or dispute will be resolved by binding arbitration by a single arbitrator under the applicable rules of the alternative dispute resolution of the American Arbitration Association, with that arbitrator rendering a written decision with separate findings of fact and conclusions of law. The arbitrator shall be a person involved in the retail automotive field having no less than five (5) years experience in such field, disinterested in this purchase, lease or financing transaction, not affiliated with the parties, and recognized as ethical and reputable. An award by the arbitrator shall be final and binding on all parties to the proceeding and is not appealable to any court or other body. The arbitrator shall apply the substantive law of the state of Maryland and the arbitration shall take place in Baltimore County, Maryland.

Mr. Lyles opposed the motion and countered that he never signed an arbitration agreement, was never presented with the Separate Arbitration Agreement referenced in paragraph 7 of the Order, and never reviewed any such document. Mr. Lyles also argued that, even if he had agreed to arbitrate disputes with Deer Auto, the arbitration agreement was not assigned to Santander.

At a hearing on Santander's motion, the circuit court concluded that: (1) the Order included a binding agreement to arbitrate; (2) because the Order and RISC memorialized a single transaction, they needed to be construed as one contract; and (3) the integration clause in the RISC did not render the arbitration agreement unenforceable. As a result, the court granted the motion to compel arbitration.

6

Mr. Lyles timely appealed and advanced the same arguments in the Appellate Court of Maryland, which affirmed the circuit court in a reported opinion. *Lyles v. Santander Consumer USA Inc.*, 263 Md. App. 583 (2024). The court concluded that Mr. Lyles's "failure to sign or receive the Separate Arbitration Agreement does not make the arbitration provision unenforceable," holding that Mr. Lyles was "presumed to know the contents" of the incorporated agreement, despite never being shown its terms. *Id.* at 606-07. The court also determined that the absence of specific arbitration details did not defeat the agreement to arbitrate, as such gaps could be filled by the Maryland Uniform Arbitration Act. *Id*. at 604. The court further held that "the Buyer's Order and RISC should be interpreted together as part of a single transaction, and the assignee [Santander] obtained all the rights of the assignor [Deer Auto], including the right to compel arbitration." *Id.* at 612.

Mr. Lyles petitioned for a writ of certiorari, which we granted. *Lyles v. Santander Consumer USA, Inc.*, 490 Md. 81 (2025).

## II

## A

When faced with a petition to compel arbitration under section 3-207 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland, the circuit court's role is limited to determining, without a jury, whether an arbitration agreement for the specific dispute exists. *Park Plus, Inc. v. Palisades of Towson*, *LLC*, 478 Md. 35, 51 (2022) (first citing MD. CODE ANN., CTS. & JUD. PROC. ("CJP") §§ 3-204, 3-207(b), 3-208(c) (2020); and then citing *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 104 (1983)).

A court's enforcement power can be invoked in two ways: first, when one party refuses to arbitrate, the other party may petition to compel arbitration; and second, when one party initiates or threatens arbitration, the resisting party may petition to stay the proceedings. *Id*. at 51. In either instance, if the court determines that an arbitration agreement exists, it shall order arbitration; otherwise, it shall deny the petition. *Id.* (citing CJP § 3-207(c)).

B

Mr. Lyles advances two principal arguments against the existence of a binding arbitration agreement. The first argument raises an issue of contract formation. Mr. Lyles contends that he cannot be bound by the Separate Arbitration Agreement referenced on the first page of the Order because it was not, in fact, attached to the Order and therefore was not incorporated by reference under its plain language. He also maintains that because he never received, reviewed, or signed the Separate Arbitration Agreement, he is not bound by it because Maryland law requires mutual assent to contract terms. He argues that "[a] form contract cannot, by its own self-serving declaration, magically bind a consumer to secret terms tucked away elsewhere." Mr. Lyles further contends that the language in the Order is too indefinite to create any enforceable obligation to arbitrate.

Santander counters that ordinary principles of contract law, coupled with Maryland's strong public policy favoring arbitration, support enforcement of the arbitration agreement. Santander argues that Mr. Lyles is bound by the Separate Arbitration Agreement through valid incorporation by reference, asserting that Maryland law presumes a party who signs a contract knows its contents and that Mr. Lyles acknowledged reading and understanding the Order. Santander further maintains that any lack of specificity in

8

arbitration procedures is cured by the Maryland Uniform Arbitration Act's gap-filling provisions.

The second argument made by Mr. Lyles raises an issue of contract interpretation. Mr. Lyles argues that Santander, as assignee of only the RISC, lacks standing to enforce any arbitration provision in the unassigned Order. He maintains that the RISC's "upon assignment" integration clause limits Santander's rights exclusively to "this contract and the addenda to this contract"—the RISC, which contains no arbitration provision— distinguishing this clause from the separate integration clauses in the Order and RISC that governed his relationship with Deer Auto.

Santander counters that, under *Ford v. Antwerpen Motorcars Ltd.*, 443 Md. 470 (2015), the Order and RISC constitute a single, integrated agreement that should be construed together, giving Santander, as assignee, all rights of the assignor, including the right to compel arbitration. Santander maintains that the integration clause language here is identical to that in *Ford* and *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690 (4th Cir. 2012), where both courts concluded that assignees could enforce arbitration provisions. Mr. Lyles contends that these cases are distinguishable.

For purposes of our analysis, we assume without deciding that the arbitration provisions referenced in the Order created a binding obligation between Mr. Lyles and Deer Auto.[2] Even accepting this premise, we conclude that any such arbitration agreement was not within the scope of the assignment from Deer Auto to Santander.

---

[2] This Court granted the petition for writ of certiorari on two issues:

We begin with the principles that guide our interpretation of contracts:

Maryland courts follow the objective theory of contract interpretation. Under that approach, unless the language of the contract is ambiguous, we interpret it based on what a reasonable person in the position of the parties would have understood the language to mean and not the subjective intent of the parties at the time of formation. Therefore, it is the written language embodying the terms of an agreement that will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract.

We do not, however, interpret contractual language in a vacuum. Instead, we interpret that language in context, which includes not only the text of the entire contract but also the contract's character, purpose, and the facts and circumstances of the parties at the time of execution. Although providing relevant context may necessarily require consultation of evidence beyond the four corners of the contract itself, it does not extend to extrinsic or parol evidence of the parties' subjective intent, such as evidence of the parties' negotiations. Such evidence may be considered only after a court first determines that the relevant contract language is ambiguous, which occurs when, viewing the plain language in its full context, a reasonably prudent person could ascribe more than one reasonable meaning to it.

In interpreting the plain language of a contract in context, we attempt to construe the contract as a whole, interpreting separate provisions harmoniously, so that, if possible, all of them may be given effect. Construing the contract as a whole requires that effect be given to each clause

---

1.      Where a separate document is never made available to, shown to, or signed by a contracting party, but that separate document is incorporated by reference into the underlying contract, is a consumer bound by the terms of that separate document despite the fact that the consumer had no knowledge of or access to the terms contained in that separate document?
2.      When a contract contains two distinct integration clauses—one defining the rights and obligations between the buyer and seller and the other defining the rights and obligations between the buyer and the assignee—does the assignee obtain rights under the terms of the buyer/seller integration clause?

Our resolution of the second question renders it unnecessary to address the first.

to avoid an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed.

It is a bedrock principle of contract interpretation in Maryland that our courts consistently strive to interpret contracts in accordance with common sense.

*Adventist Healthcare, Inc. v. Behram*, 488 Md. 410, 432-34 (2024) (citation modified).

Some transactions are memorialized in multiple instruments. In such transactions, to the extent possible, courts will harmonize and give effect to the provisions of each instrument. *Rourke v. Amchem Prods., Inc.*, 384 Md. 329, 354 (2004). Put otherwise, to ascertain the contracting parties' intentions, courts will apply the traditional canons of contract interpretation across the multiple instruments by construing them as a single contract. The multiple instrument rule, therefore, merely assists courts in carrying out their interpretive role. It is not used to negate or override the parties' intent made evident in the language used in the contract documents.

2

This Court applied the multiple instrument rule in *Ford v. Antwerpen Motorcars* to determine whether used-car purchasers were required to arbitrate their disputes with the dealer. 443 Md. at 483. In *Ford*, the purchasers sued the dealership, alleging misrepresentations related to the sale. *Id.* at 473. As with the transaction here, the buyers and dealer memorialized their agreement in a "Buyer's Order" and a retail installment sale contract. The arbitration agreement was included in the Buyer's Order, not the installment contract. The buyers contended that, because the installment contract was signed *after* the Buyer's Order, "the Buyer's Order was superseded by the RISC, which contained no

11

arbitration agreement." *Id.* at 475. This Court rejected that argument, holding that the Buyer's Order and the installment contract should be read together as evidencing the parties' entire agreement. *Id.* at 479-80.

In reaching that conclusion, we relied on the installment contract's integration clause, which stated that "[t]his contract along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement." *Id.* at 479 (alteration in original) (emphasis omitted). We also applied the principle that "[w]here several instruments are made a part of a single transaction they will all be read and construed together as evidencing the intention of the parties in regard to the single transaction." *Id.* (quoting *Rocks v. Brosius*, 241 Md. 612, 637 (1966)).

Santander relies on *Ford* for the proposition that the Order and RISC must be construed as a single contract. But Santander's reasoning conflates two issues: (1) whether the two instruments (the Order and the RISC) should be *read together* to understand the obligations of the original parties to the contracts—Mr. Lyles and Deer Auto; and (2) the scope of the assignment, that is, whether *both* instruments were assigned to Santander. *Ford* resolved only the former, but the issue before us is the latter. Because *Ford* did not involve claims against an assignee, it provides no guidance on the scope of the assignment to Santander.

Contract rights can be assigned in whole or in part. *See Pub. Serv. Comm'n of Md. v. Panda-Brandywine, L.P.*, 375 Md. 185, 197-98 (2003). Determining the scope of an assignment does not turn on whether the transaction was documented in a single instrument or multiple instruments. Rather, it turns on the specific language used in the provisions

12

governing the assignment. To illustrate the point, consider what the analysis would entail if we extracted each provision from both the Order and the RISC, inserted them into a single document, and organized the document with sequential numbering. This would be a change in form only. But because we would now have a single document, there would be no need to apply the multiple instrument rule; we would simply apply the settled rules of contract interpretation. Thus, we would examine the assignment clause and related contract language to determine which provisions—or which rights arising from those provisions—were included within the scope of the assignment to Santander. That Deer Auto chose to memorialize this transaction in two separate documents does not alter the analysis.

3

The RISC has two provisions that define the scope of the assignment. The first is the assignment clause itself: "Seller assigns its interest in this contract to SANTANDER CONSUMER USA (Assignee) under the terms of Seller's agreement(s) with Assignee." Under the plain language of this provision, the thing assigned to Santander was Deer Auto's entire interest in "this contract." The RISC refers to itself as "this contract" in at least 25 places. Because the arbitration provisions Santander seeks to enforce are contained only in the Order, we must determine whether, as Santander insists, "this contract"—the RISC—incorporates the Order.

Answering this question requires us to construe the assignment clause in harmony with the RISC's integration clause, which reads:

> This contract, along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement between you and us affecting this purchase. No oral agreements or understandings are

binding. Upon assignment of this contract: (i) only this contract and the addenda to this contract comprise the entire agreement between you and the assignee relating to this contract; (ii) any change to this contract must be in writing and the assignee must sign it; and (iii) no oral changes are binding.

The first sentence defines "the entire agreement" between Mr. Lyles and Deer Auto as "this contract" plus "all other documents signed by you in connection with the purchase of this vehicle." The only two documents signed by Mr. Lyles were the RISC and the Order.

Notice that under the plain language and grammatical structure of the first sentence, "this contract" is one thing—the RISC—and "all other documents" (including the Order) are separate things that, when combined, comprise the "entire agreement" between the original contracting parties: Mr. Lyles and Deer Auto. Put another way, the Order is part of the "entire agreement" with Deer Auto but is not part of "this contract." Under the assignment clause, however, only "this contract" was assigned, not the "entire agreement."

The third sentence confirms this interpretation by defining "the entire agreement between you and the assignee"—that is, Mr. Lyles and Santander—upon assignment of "this contract." Notice the use of the limiting word "only" in confirming that "only this contract [the RISC] and the addenda to [the RISC] comprise the entire agreement between" Mr. Lyles and Santander.

The first and third sentences of the integration clause can be expressed in separate equations:

| "this contract" (RISC) | + | "all other documents" (Order) | = | Entire Agreement with Deer Auto |
|---|---|---|---|---|
| "only this contract" (RISC) | + | "addenda to this contract" (RISC) | = | Entire Agreement with Santander |

As these equations illustrate, Mr. Lyles's agreement with Santander was narrower than his agreement with Deer Auto. The word "only" in the third sentence is the linchpin. By providing that "only this contract and the addenda to this contract comprise the entire agreement between you and the assignee," the third sentence (represented by the second equation) excludes from the "entire agreement" with the assignee what the first sentence included in the "entire agreement" with the dealer: "all other documents signed by you in connection with the purchase of this vehicle." The Order falls squarely within that excluded category; therefore, neither the Order nor the arbitration provisions referenced within it were included within the assignment to Santander.

Santander's interpretation—that "this contract" includes the Order—would render the bifurcated structure of the RISC's integration clause superfluous. If "this contract" includes the Order, there is no reason to distinguish between the pre-assignment scope ("this contract, along with all other documents . . .") and the post-assignment scope ("only

15

this contract and the addenda . . ."). The limiting word "only" would serve no function. We reject an interpretation that strips this word of all meaning.

4

Santander's reliance on *Rota-McLarty*, 700 F.3d at 697-98, is misplaced. There, a used-car buyer brought a putative class action against Santander, the assignee of a retail installment sales contract, alleging violations of Maryland consumer protection laws. *Id.* at 694-95. The United States Court of Appeals for the Fourth Circuit held that Santander, as assignee of a retail installment sales contract, could enforce an arbitration provision contained in a Buyer's Order that was not expressly assigned. *Id.* at 701. We neither adopt nor reject the court's analysis in *Rota-McLarty*, but instead find it inapplicable because it does not address the bifurcated integration language on which our analysis turns.

In *Rota-McLarty*, the integration clause in the installment contract stated simply: "This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding." *Id.* at 695. Unlike the RISC here, that integration clause contained no "upon assignment" provision defining what rights pass to an assignee. The court, thus, did not confront language specifically limiting the scope of the assignment. We do, and that language controls our analysis.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE CIRCUIT COURT FOR FURTHER PROCEEEDINGS. COSTS TO BE PAID BY RESPONDENT.**

16